# MEMPHIS & LITTLE ROCK RAILROAD *v.* DOW.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

Argued November 11, 12, 1886. — Decided January 24, 1887.

The provision in the constitution of Arkansas of 1874 that "no private corporation shall issue stock or bonds except for money or property actually received, or labor done; and all fictitious increase of stock or indebtedness shall be void" does not prevent the carrying out of an agreement between mortgage bondholders of an embarrassed railroad company in that state by which it was agreed that trustees should buy in the mortgaged property on foreclosure, and convey it to a new company to be organized by the bondholders which should issue new mortgage bonds to pay the expenses of the sale, and other new mortgage bonds to be taken by the bondholders in lieu of their old bonds, and full paid up stock subject to the mortgage debt, to be delivered to and held by the bondholders without any payment of money; and the bonds issued under such an agreement are not subject to the provisions of § 5, 488 Rev. Stat. Ark., Mansfield's Digest, page 1057, respecting the legal rate of interest for certain classes of railroad securities.

Trustees under a mortgage from a railroad company with covenants of warranty are entitled to protect the trust property against a forced sale under a prior incumbrance, and upon the payment of that incumbrance to have the benefit of its lien as against the company, and to be reimbursed the amount so paid by them with legal interest: but the rate of interest allowed by the court below in this case was in excess of the legal rate.

THE appellant, the Memphis and Little Rock Railroad Company, (as reorganized,) an Arkansas corporation, conveyed, by deed of May 2, 1877, to Pierson, Matthews, and Dow, trustees, its road and connections, and all its property, rights, and privileges, including its franchise to be a corporation, to secure the payment of its bonds of the same date, aggregating $2,600,000,

and payable in thirty years, subject to a mortgage for $250,000, executed May 1, 1877. The deed provided for the employment, at the expense of the trust estate, of such attorneys and agents as were reasonably necessary for the execution of the trust, and, also, for the payment of charges, costs, expenses, and compensation, incurred by the trustees, from time to time, "in and about or for the execution of the trust."

On the 4th day of March, 1882, the Supreme Court of Arkansas, in a suit to which that corporation was a party, rendered a decree adjudging that the state had a lien upon its road and rolling stock to secure the payment of $202,133.32, with interest, from December 22, 1879, until paid, at the rate of eight per cent. per annum; that being the aggregate principal and interest then due on a loan of $100,000 made January 10, 1861, by the state to the (old) Memphis and Little Rock Railroad Company, and secured by a mortgage upon its rolling stock and upon the same road now operated by the appellant.

On the 25th of March, 1882, five days before the day fixed for the sale directed to be made in satisfaction of that decree, the appellees, (Moran having succeeded Pierson,) as trustees in the deed of May 2, 1877, paid into the treasury of Arkansas the sum of $239,672.71 in full discharge of the state's claim.

The appellees sought by this suit to be subrogated to the rights of the state, and to charge the mortgaged property and interests with the amount so paid by them, with interest thereon, and, also, with such sums as might be ascertained to be due by reason of liabilities incurred, and costs, time, and labor expended by them in and about the trust.

The company resisted each of the claims asserted by the appellees. Its answer proceeded mainly upon the ground that the bonds secured by the deed of May 2, 1877, were and continued to be void under the constitution and laws of Arkansas, having been issued, it was alleged, to the stockholders of the appellant without consideration in money, labor, or property actually received, of which fact the plaintiffs and every original taker of the bonds were advised, and as to which subsequent takers, if such there were, were put upon inquiry by the

recitals in the mortgage securing their payment. Consequently, it was contended, the appellees were under no duty, and had no legal right as trustees, or in any other capacity, to intervene and satisfy the decree in favor of the state, or to incur liability or costs in reference to the defendant's property. The company also filed a cross-bill, setting forth the same grounds, and praying that upon final hearing the deed of May 2, 1877, and the bonds thereby secured, be declared void.

The court sustained exceptions to the answer and a demurrer to the cross-bill, dismissing the latter for want of equity, and rendering a decree in accordance with the prayer of the bill. By the decree, the appellees were subrogated to all of the rights of the state under the decree of March 4, 1882; and for the amount so paid by them, with interest thereon from March 25, 1882, at the rate of eight per cent. per annum, aggregating $261,456.27, together with interest on the latter sum at the same rate, from the date of the decree herein, they were adjudged to have a lien upon the property, rights, and interests embraced by the deed of May 2, 1877, subject — the appellees having consented thereto — to the lien created by that deed as well as by a deed executed May 1, 1877. A decree was also entered against the company for $29,580.87, the amount found due to the plaintiffs for services rendered in and about the trust, and for counsel fees and costs in this suit. To this provision of the decree the appellant also objected upon grounds to which reference will be hereafter made.

The principal question related to the validity of the $2,600,000 issue of bonds secured by the deed of May 2, 1877.

The principal facts, chronologically stated, which bore upon this and other questions in the case were as follows: The Memphis and Little Rock Railroad Company was incorporated in 1853 under the laws of Arkansas, with authority to increase its capital to a sum sufficient to complete and operate a railroad between Memphis and Little Rock, by opening books for new stock or by selling new stock, or by borrowing money secured by mortgage of its charter and stock. Its stockholders, at a meeting held February 20, 1860, adopted a resolution authorizing the board of directors, for the purpose of

building and equipping the road, to increase the capital stock of the company to $1,300,000, by issuing coupon bonds of $1000 each, bearing eight per cent. interest, convertible at any time within ten years thereafter into shares of stock — such bonds to be secured by mortgage upon the company's road, charter, works, and real estate, or either of them. The action of the stockholders having been ratified by the directors, the company by deed of trust executed May 1, 1860, conveyed to Tate and others its franchises, property, privileges, road, road-bed, right of way, rolling stock, and works, in trust to secure its bonds, aggregating $1,300,000, payable thirty years after date, with interest at the rate of eight per cent. per annum. On the 10th of January, 1861, it placed a mortgage upon its road and rolling stock to secure the before-mentioned state loan of $100,000, with interest from that date until paid, at the rate of eight per cent. By deed of March 1, 1871, it conveyed its franchises, property, and net income, to Henry F. Vail, in trust to secure other bonds, amounting to $1,000,000, payable thirty years thereafter, with interest at the rate of eight per cent. per annum. The company having made default in the payment of interest on the latter bonds, Vail, the trustee, on the 17th day of March, 1872, sold and conveyed these properties, rights, privileges, and franchises, for $15,000 in cash, subject to all prior and superior liens, to one Stillman Witt, who purchased in behalf of the holders of bonds, secured by the deed of March 1, 1871. Subsequently, March 29, 1873, Witt executed a deed declaring the respective interests of the parties whom he represented, and conveying to each his proportionate share of the property and interests so purchased. On the 17th of November, 1873, the grantees in the latter deed conveyed the same property, rights, and franchises to the Memphis and Little Rock Railway Company — a corporation then recently organized under the laws of Arkansas, by the parties to whom Witt conveyed, subject, however, to the condition that that company should execute its bonds for $2,600,000, secured by first mortgage to the New York Guaranty and Indemnity Company — that amount, according to the estimate of the parties, being less than the principal and in-

terest due on the $1,300,000 mortgage of May 1, 1860, and other indebtedness theretofore incurred in the construction and equipment of the road. In conformity with that condition the rail*way* company executed, December 1, 1873, a mortgage securing its bonds for $2,600,000. That mortgage provided among other things, that "in case of any sale, judicial or otherwise, of the premises embraced in this mortgage, and the holders of a majority in interest of the then outstanding bonds secured by this mortgage shall, in writing, request the said trustee, or its successor or successors, or his or their survivor or survivors, so to do it, they or he is authorized to purchase the premises embraced herein for the use and benefit of the holders of the then outstanding bonds and coupons secured by this mortgage. And that, having so purchased said premises, the right and title thereto shall vest in said trustee or trustees, and no bondholder shall have any claim to the premises or to the proceeds thereof, except for his *pro rata* share of the proceeds of said premises as represented in a new company or corporation to be formed by a majority in interest of said bondholders for the use and benefit of the holders of the bonds secured hereby. And whenever the holders of a majority of said bonds shall have organized a new company or corporation for the use and benefit of all the holders of the bonds secured by this mortgage, the said trustee, or its successor or successors, or his or their survivor or survivors, shall reconvey the premises so purchased by it, him, or them to said new company or corporation."

The New York Guaranty and Indemnity Company was succeeded in the trust by Pierson, Dow, and Matthews. The rail*way* company having made default in meeting the interest on its bonds, and the principal, under the terms of the deed of trust, becoming thereby due, the trustees instituted a suit for foreclosure. Pending that suit, Tate and others, trustees in the mortgage of May 1, 1860, were made coplaintiffs. The bill was amended and the prayer for relief so enlarged as to include a foreclosure of the latter mortgage. Both mortgages were foreclosed by final decree of November 1, 1876, the amount found to be due on that of May 1, 1860, being $1,088,-

348.80, with interest at the rate of six per cent. per annum, and the amount due on that of December 1, 1873, being $3,016,000. The decree provided, among other things, "that if said trustees shall be so requested, and shall bid for said property, they shall pay into court a sufficient sum to pay the costs of sale and this suit, including counsel fees, allowances to trustees, to the commissioner for sale, and master of this court. And for the residue, their bid to the amount due and ordered to be paid by this decree shall be accepted by said commissioner, and he shall forthwith execute a deed conveying the purchased property to said trustees for and upon the trusts expressed in said second mortgage; that is to say, upon trust that they will convey the same to such new company or corporation as may be organized by the holders of a majority in interest of said bonds upon demand thereof."

At the sale under that decree, Pierson, Dow, and Matthews, as trustees in the deed of December 1, 1873, purchased the property for the holders of bonds secured by that instrument, and a deed was made to them, on April 28, 1877, in trust for such holders, "and upon the further trust that they will convey the same and all thereof to such company or corporation as may be formed by the holders of a majority of such bonds at such time and upon such terms and conditions as a majority of the holders of such bonds may require."

On the day last mentioned the majority, in value, of such bondholders entered into articles of association reorganizing the Memphis and Little Rock Railroad Company and fixing its capital stock at $1,300,000. The parties engaged in the reorganization being holders of the bonds secured by the deed of December 1, 1873, and beneficiaries under the deed of April 28, 1877, took the entire stock to themselves without paying therefor in money. The articles, after declaring that each and every share of the above-named stock was fully paid stock, and acknowledging, on behalf of the company, that one hundred dollars had been paid upon each share by the holder thereof, provided:

"That we hereby require the said trustees, William S. Pierson, Watson Matthews, and R. K. Dow, to convey all and

singular the property, charter, franchises, rights, privileges, and immunities, so conveyed to them by such commissioner, to the Memphis and Little Rock Railroad Company, as reorganized, upon the following terms and conditions, to wit:

" 1. That said railroad company, as reorganized, shall issue its two hundred and fifty bonds, payable to bearer at the office of the Central Trust Company of New York, in the city of New York, each for one thousand dollars, maturing in five equal instalments, on the first days of May, in the years 1879, 1880, 1881, 1882, and 1883, bearing interest from date at the rate of ten per centum per annum, payable semiannually at the same place, with coupons for said interest annexed; and shall secure the payment of the principal and interest thereof by a mortgage of all and singular the said property, charter, franchises, rights, privileges, and immunities, of which mortgage said Pierson, Matthews, and Dow shall be trustees, and shall deliver the same to the said Pierson, Matthews, and Dow, to be by them sold, and the proceeds applied to the payment of the liens upon the said property reserved by the decree of the said court directing the sale thereof, and to the payment of moneys borrowed by them to make the cash payment required by said decree.

" 2. That said Memphis and Little Rock Railroad Company, as reorganized, shall execute and deliver to said Pierson, Matthews, and Dow, its two thousand five hundred and seventy-five other bonds, each for the sum of one thousand dollars; and its one hundred other bonds, each for two hundred and fifty dollars, payable at the same place thirty years after date, bearing interest from the first day of July, 1878, and until the first day of July, 1882, at the rate of four per centum per annum, and after the last-named date at eight per centum per annum, payable at the same place, with coupons for such interest attached; and shall make provision for a sinking fund for redemption of such bonds, and shall secure payment of said bonds, interest, and sinking fund, by a mortgage of all said property, charter, franchises, rights, privileges, and immunities, of which mortgage said Pierson, Matthews, and Dow shall be trustees; such last-named bonds to be by said Pierson,

Matthews, and Dow *equally distributed among the holders of the bonds secured by the mortgage of the Memphis and Little Rock Railway Company, of date December 1, 1873.*"

These terms were formally accepted by the stockholders, and on April 30, 1877, the trustees conveyed to the reorganized company the property, rights, and interests so purchased, subject to the terms, conditions, and trusts prescribed in its said Articles of Association.

Pursuant to the conditions upon which it received title, the appellant, on May 1, 1877, issued its bonds, amounting to $250,000, and, to secure their payment, conveyed the same property, rights, and interests to Pierson, Dow, and Matthews, as trustees. The proceeds of these bonds were applied in payment of the expenses of foreclosure and reorganization. In further compliance with these terms, the appellant issued its bonds for $2,600,000 for distribution among the holders of bonds secured by the mortgage of December 1, 1873, and, to secure their payment, executed the before-mentioned mortgage or deed of trust of May 2, 1877. The recitals in the deed disclosed all the foregoing circumstances connected with the organization of the appellant corporation, and with its acquisition of these properties.

[The provisions of § 8, art. 12, of the Constitution of Arkansas of 1877, and the provisions of § 5488 of the Revised Statutes of Arkansas, Mansfield's Digest, page 1057, which were supposed to apply to this reorganization, are stated below in the opinion of the court.]

*Mr. Wager Swayne* and *Mr. B. C. Brown* (*Mr. John F. Dillon* and *Mr. J. C. Brown* were with them on the brief), for appellant, cited: *Root* v. *Godard*, 3 McLean, 102; *Hayden* v. *Davies*, 3 McLean, 276; *Root* v. *Wallace*, 4 McLean, 8; *Harris* v. *Runnels*, 12 How. 79; *Armstrong* v. *Toler*, 11 Wheat. 258; *Cincinnati Ins. Co.* v. *Rosenthal*, 55 Ill. 85; *Leavitt* v. *Palmer*, 3 N. Y. 19; *S. C.* 51 Am. Dec. 333; *Southern Loan Co.* v. *Morris*, 2 Penn. St. 175; *S. C.* 44 Am. Dec. 188; *Davidson* v. *Lanier*, 4 Wall. 447; *Bank of the United States* v. *Owens*, 2 Pet. 527; *Brown* v. *Tarkington*, 3 Wall. 377; *Peck*

*v. Burr*, 10 N. Y. 294; *Barton v. Port Jackson Co.*, 17 Barb. 397; *Utica Ins. Co. v. Scott*, 19 Johns. 1; *Worthen v. Budgett*, 32 Ark. 496; *Eagle v. Beard*, 33 Ark. 497; *Valett v. Parker*, 6 Wend. 615; *Dewing v. Perdecaries*, 96 U. S. 193; *German Bank v. De Shon*, 41 Ark. 331; *Stanton v. Alabama & Chattanooga Railroad*, 2 Woods, 523; *Kerrison v. Stewart*, 93 U. S. 155; *Corcoran v. Chesapeake & Ohio Canal Co.*, 94 U. S. 741; *Thomas v. Railroad Co.*, 101 U. S. 71; *Coppell v. Hall*, 7 Wall. 542; *In re Comstock*, 3 Sawyer, 218; *Collins v. Blantern*, 2 Wilson, 341, and notes in 1 Sm. Lead. Cas.; *Pacific Railroad v. Missouri Pacific Railroad*, 111 U. S. 505; *Lloyd v. Scott*, 4 Pet. 205; *Jackson v. Dominick*, 14 Johns. 435; *De Wolf v. Johnson*, 10 Wheat. 367; *Weed Sewing Machine Co. v. Emerson*, 115 Mass. 554; *Memphis & Little Rock Railroad v. Berry*, 41 Ark. 436; *Shrewsbury, &c., Railway v. Northwestern Railway*, 6 H. L. Cas. 113; *Commonwealth v. Smith*, 10 Allen, 448; *Head v. Providence Ins. Co.*, 2 Cranch, 127; *Chambers v. Manchester & Milford Railway*, 5 B. & S. 588; *Rockwell v. Elkhorn Bank*, 13 Wis. 653; *Kent Coast Railway v. London, Chatham & Dover Railway*, 3 L. R. Ch. 656; *Guckenheimer v. Angevine*, 81 N. Y. 394; *Wilkinson v. Babbit*, 4 Dillon, 207; *Railroad Co. v. Soutter*, 13 Wall. 517.

*Mr. U. M. Rose*, for appellees, cited: *Memphis & Little Rock Railroad v. Dow*, 19 Fed. Rep. 388, and cases therein cited; *Duncan v. Jaudon*, 15 Wall. 165; *Railroad Co. v. Howard*, 7 Wall. 392; *Mechanics' Bank v. New York Railroad*, 13 N. Y. 599; *Weaver v. Barden*, 49 N. Y. 286; *Shaw v. Spencer*, 100 Mass. 382; *Memphis, &c., Railroad v. Berry*, 41 Ark. 436; *Cordova v. Hood*, 17 Wall. 1; *Richardson v. Hamlett*, 33 Ark. 237; *Craig v. Leslie*, 3 Wheat. 563; *Miller v. Moore*, 3 Jones N. C. Eq. 431; *Zabriskie v. Cleveland, &c., Railroad*, 23 How. 400; *Pine Grove v. Talcott*, 19 Wall. 666; *Hough v. Cook County Land Co.*, 73 Ill. 23; *Bradley v. Ballard*, 55 Ill. 413; *Houston Railroad v. Shirley*, 54 Texas, 125; *Bank v. Hammond*, 1 Rich. S. C. Eq. 281; *Grant v. Henry Clay Coal Co.*, 80 Penn. St. 208; *Natoma Water Co. v. Clarkin*, 14 Cal. 544; *Darst v. Gale*, 83 Ill. 136; *Union Water Co. v. Murphy Co.*,

22 Cal. 620; *Southern Ins. Co.* v. *Lanier*, 5 Fla. 110; *S. C.* 58 Am. Dec. 448; *Third Avenue Bank* v. *Dimock*, 24 N. J. Eq. (9 C. E. Green) 26; *Natchez* v. *Mallery*, 54 Miss. 499; *Chicago Building Society* v. *Crowell*, 65 Ill. 453; *Attleborough National Bank* v. *Rogers*, 125 Mass. 339; *Indiana* v. *Woram*, 6 Hill. 33; *S. C.* 40 Am. Dec. 378; *Steam Nav. Co.* v. *Weed*, 17 Barb. 378; *Underwood* v. *Newport-Lyceum*, 5 B. Mon. 129; *S. C.* 41 Am. Dec. 260; *State Board* v. *Citizens' Railway Co.*, 47 Ind. 407; *Doyle* v. *Peerless Petroleum Co.*, 44 Barb. 239; *Sturges* v. *Knapp*, 31 Vt. 1; *Whitman Mining Co.* v. *Baker*, 3 Nevada, 386; *Railway Co.* v. *McCarthy*, 96 U. S. 258; *Hotel Co.* v. *Wade*, 97 U. S. 13; *Hitchcock* v. *Galveston*, 96 U. S. 341; *Ex parte Chippendale*, 4 De G. M. & G. 19; *In re Cork & Yougal Railway Co.*, 4 L. R. Ch. 748; *Troup's Case*, 29 Beav. 353; *Hoare's Case*, 30 Beav. 225; *Peck* v. *Gurney*, 13 Eq. 79; *Peabody* v. *Flint*, 6 Allen, 52; *Royal Bank* v. *Grand Junction Railway Co.*, 125 Mass. 490; *In re Pinto Silver Mining Co.*, 8 Ch. Div. 273; *Thompson* v. *Lambert*, 44 Iowa, 239; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159; *Cozart* v. *Georgia Railroad Co.*, 54 Geo. 379; *Commissioners* v. *January*, 94 U. S. 202; *Twin-Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Andrews* v. *Hensler*, 6 Wall. 254; *National Bank* v. *Matthews*, 98 U. S. 621; *Benjamin* v. *Hobbs*, 31 Ark. 151; Sheldon on Subrogation, §§ 19, 30, 31, 33, 34, 38, 40, and cases there cited; *Crosby* v. *Taylor*, 15 Gray, 64; *S. C.* 77 Am. Dec. 352; *Valle* v. *Fleming*, 29 Mo. 152; *S. C.* 77 Am. Dec. 557; *Davis* v. *Roosevelt*, 53 Texas, 305; *Johnson* v. *Robertson*, 34 Maryland, 165; *Payne* v. *Hathaway*, 3 Vt. 212; *Webb* v. *Williams*, Walker (Mich.) 544; *Howard* v. *North*, 5 Texas, 290; *S. C.* 51 Am. Dec. 769; *Selleck* v. *Phelps*, 11 Wis. 380; *Tompkins* v. *Sprout*, 55 Cal. 31; *McLaughlin* v. *Daniel*, 8 Dana, 182; *Porter* v. *Doe*, 10 Ark. 186; *West* v. *Waddill*, 33 Ark. 575; *Summers* v. *Howard*, 33 Ark. 490; *Waggoner* v. *Lyles*, 29 Ark. 47; *Oneida Bank* v. *Ontario Bank*, 21 N. Y. 490; *Shall* v. *Biscoe*, 18 Ark. 142; *Scott* v. *Orbison*, 21 Ark. 202.

*Mr. John M. Bowers*, for appellees, cited, in addition to some cases cited by *Mr. Rose*, the following cases not cited on his

brief : *Barnes* v. *Mott,* 64 N. Y. 397 ; *Pierce* v. *Emery,* 32 N.
H. 484 ; *Stanley* v. *Chester & Birkenhead Railway,* 3 Myl. &
Cr. 773 ; *Low* v. *Connecticut, &c., Railroad,* 45 N. H. 370 ;
*Olcott* v. *Tioga Railroad,* 27 N. Y. 546 ; *Moss* v. *Averill,* 10
N. Y. 449 ; *Oregon Railway* v. *Oregon Railway & Nav. Co.,*
28 Fed. Rep. 505, and cases cited ; *Parish* v. *Wheeler,* 22 N.
Y. 494 ; *Bissell* v. *Mich. Southern & Northern Ind. Railroad,*
22 N. Y. 258 ; *Williams* v. *Morgan,* 111 U. S. 684 ; *McCluer* v.
*Manchester & Lawrence Railroad,* 13 Gray, 124 ; *S. C.* 74 Am.
Dec. 624.

MR. JUSTICE HARLAN, after stating the case as above reported,
delivered the opinion of the court.

From these facts it appears that at the date of the mortgage
of May 2, 1877, appellant's entire assets consisted of the prop-
erty, rights, and privileges purchased by Pierson, Dow, and
Matthews, trustees, at the sale under the decree foreclosing
the mortgage of December 1, 1873, and by them conveyed to
it, on the express condition that the beneficial owners should
receive therefor, besides $1,300,000 in stock, its mortgage
bonds for $2,600,000. That amount, in the stock and bonds
of the appellant, was the valuation placed by such owners upon
their interests, after taking into account, as well the amount
previously expended in the construction and maintenance of
the road, as the probable value, in the future, of the stock and
bonds to be given for a surrender of those interests. The
transaction was, in its essence, a purchase of said property,
rights, and privileges by the appellant at an agreed price, to
be paid in its stock and bonds. A part of the price was paid
when the $1,300,000 of stock was issued. But appellant dis-
putes its liability upon the bonds given for the balance, upon
the theory that they were prohibited from issuing them by
the eighth section of the twelfth article of the constitution of
Arkansas, adopted in 1874. That section provides that "no
private corporation shall issue stock or bonds, except for money
or property actually received, or labor done ; and all fictitious
increase of stock or indebtedness shall be void." In support

of this view our attention is called to the fact, admitted by the demurrer, that the full value of the property, rights, and privileges conveyed to appellant did not exceed $1,300,-000, the amount at which the capital stock was fixed; and, consequently, it is argued, the $2,600,000 of bonds were issued without any consideration received in money, property, or labor, and represented only a fictitious indebtedness. In other words, appellant's vendors were fully compensated for their interests by taking to themselves its entire stock.

We do not concur in this view of the case. It does not, we think, rest upon a sound interpretation of the state constitution. The prohibition against the issuing of stock or bonds, except for money or property actually received or labor done, and against the fictitious increase of stock or indebtedness, was intended to protect stockholders against spoliation, and to guard the public against securities that were absolutely worthless. One of the mischiefs sought to be remedied is the flooding of the market with stock and bonds that do not represent anything whatever of substantial value. In reference to a provision in the constitution of Illinois, adopted in 1870, containing a prohibition, as to railroad corporations, similar to that imposed by the Arkansas constitution upon all private corporations, the Supreme Court of the former state, in *Peoria & Springfield Railroad Co.* v. *Thompson*, 103 Ill. 187, 201, said: "The latter part of the clause of the constitution in question, which declares that 'all stocks, dividends, and other fictitious increase of the capital stock or indebtedness of such corporation shall be void,' we think, clearly points out the chief object which the constitutional convention sought to accomplish in adopting it; and to this we must look, in a large degree, for a solution of the language which precedes it. The object was, doubtless, to prevent reckless and unscrupulous speculators, under the guise or pretence of building a railroad or of accomplishing some other legitimate corporate purpose, from fraudulently issuing and putting upon the market bonds or stocks that do not and are not intended to represent money or property of any kind, either in possession or expectancy, the stock or bonds in such case being entirely fictitious. . . ."

"Under this provision of the constitution, railroad companies have no right to lend, give away, or sell on credit, their bonds or stock, nor have they the right to dispose of either, except for a present consideration, and for a corporate purpose."

Recurring to the language employed in the Arkansas constitution, we are of opinion that it does not necessarily indicate a purpose to make the validity of every issue of stock or bonds by a private corporation depend upon the inquiry whether the money, property, or labor actually received therefor was of equal value in the market with the stock or bonds so issued. It is not clear, from the words used, that the framers of that instrument intended to restrict private corporations — at least when acting with the approval of their stockholders – in the exchange of their stock or bonds for money, property, or labor, upon such terms as they deem proper; provided, always, the transaction is a real one, based upon a present consideration, and having reference to legitimate corporate purposes, and is not a mere device to evade the law and accomplish that which is forbidden. We cannot suppose that the scheme whereby the appellant acquired the property, rights, and privileges in question, for a given amount of its stock and bonds, falls within the prohibition of the state constitution. The beneficial owners of such interests had the right to fix the terms upon which they would surrender those interests to the corporation of which they were to be the sole stockholders. And that subsequent holders of stock might not be misled, each certificate of stock states upon its face that the holder takes this stock subject to $2,850,000 of mortgage bonds of the company, which are secured by two mortgages duly recorded. All that was done was, to reorganize the Little Rock & Memphis Railroad Company upon the same basis, substantially, as to capital stock and bonded indebtedness, as existed, in respect to these properties, rights, and privileges, before the adoption of the state constitution, and while they were held and controlled by the companies which preceded the appellant in the ownership. There was, consequently, no fictitious increase by appellant of its stock or indebtedness. Under these circumstances it cannot be fairly said that the bonds secured by the mortgage were

issued without any consideration whatever actually received in property.

Equally untenable is the position that the bonds were void because made to bear interest at a rate in excess of that specified in the act of January 22, 1855, now § 5488 of the Revised Statutes of Arkansas. *Mansfield's Digest*, p. 1057. The 7th section of that act provides that, "Whenever any railroad company heretofore or hereafter incorporated in this state shall, in the opinion of the directors thereof, require an increased amount of the capital stock, they shall, if authorized by the holders of a majority of the stock, be, and they are hereby, authorized to increase their capital stock to any amount not exceeding the estimated cost of their road, and shall have power to borrow money on the credit of the corporation, not exceeding its authorized capital stock, at a rate of interest not exceeding seven per cent. per annum, and may execute its bonds therefor, in sums of five hundred dollars or one thousand dollars; and, to secure the payment thereof, may pledge the property, both real and personal, and income of such company, and, to secure the payment thereof, may execute a deed of mortgage or other instrument of writing; and such company are hereby authorized to sell, negotiate, pledge, or mortgage such bonds for the benefit of such company, and at such terms and in such places, either within or without this state, and at such rates and for such prices as, in the opinion of said directors, will best advance the interests of such company; and if such bonds are thus sold *bona fide* at a discount, such sale shall be as valid, in every respect, and such securities as binding for the respective amounts thereof, as if they were sold at their par value."

It is sufficient to say that this statute has no application to the present case; for there was here no increase of the existing capital stock of a corporation; nor were the bonds secured by the mortgage of May 2, 1877, executed for money borrowed, but for property, rights, and privileges conveyed to appellant at an agreed price, to be paid in its stock and bonds.

It results, from what has been said, that the validity of the bonds cannot be disputed upon any of the grounds stated. Neither the constitution nor the statutes of Arkansas inter-

pose any obstacle to the full performance by the appellant of the terms and conditions upon which only it acquired the ownership of the interests in question.

The appellant, in the mortgage to the appellees, covenanted that the interests conveyed were free from encumbrances, and that it would warrant and defend the title against all lawful claims whatsoever. Its duty, therefore, was to protect those interests against prior liens. Appellant having neglected to perform that duty, the appellees, as junior encumbrancers, had the right to protect the mortgaged estate against a forced sale. Upon payment of the amount due the state, they became entitled to the benefit of her lien upon the property. Although the appellees did not purchase the state's claim, or become, technically, the assignee thereof, her lien will be regarded, in equity, as subsisting, so far as is necessary for their protection.

In behalf of the appellant it is contended that the decree below went beyond what was required for the indemnification of the appellees. The debt due the state, by the terms of her contract with the old company, bore interest at the rate of *eight* per cent. per annum until paid. The entire claim, with interest at that rate, was paid by the appellees. But the decree below gave a lien, as against the appellant, for the amount so paid with interest *from the date of such payment, at the same rate as was stipulated in the contract between the state and her debtor.*

The constitution of Arkansas provides that "all contracts for a greater rate of interest than ten per centum per annum shall be void, as to principal and interest, and the general assembly shall prohibit the same by law; but when no rate of interest is agreed upon, the rate shall be six per centum per annum." Art. 19, § 13. And by statute it is provided that "judgments or decrees upon contracts bearing more than six per cent. interest shall bear the same interest as may be specified in such contracts, and the rate of interest shall be expressed in all such judgments and decrees; and all other judgments and decrees shall bear interest at the rate of six per cent. per annum until satisfaction is made as aforesaid."

The right of subrogation is not founded on contract. It is

a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties. All that the appellees can, in good conscience, demand, is *reimbursement* for their outlay in protecting the mortgaged property against the prior lien of the state. When relief to that extent is accorded, they will have no just ground to complain, especially as the debt held by the state was not the personal debt of the appellant. There was no agreement between them and the appellant in respect to interest upon any sum they might be compelled to pay in order to relieve the property from prior incumbrances. If, therefore, they are adjudged to have a lien upon the mortgaged property for the whole amount actually paid to the state, with interest thereon, from the date of such payment, at the rate established by law in the absence of an agreement as to rate, they will be fully indemnified. It is not for the court or for parties to say that the rate of interest fixed by law in the absence of an agreement, is not adequate compensation for delay in the payment of money. It results that the decree, so far as it allows to appellees interest in excess of six per cent. per annum, on the aggregate amount of principal and interest paid by them to the state, is erroneous.

One other question remains to be determined. The appellant insists that the court below erred in giving judgment against it for $29,580.87, the amount found to be due the appellees for services and counsel fees herein and for costs paid out by the appellees in this suit. We are of opinion that the decree in this respect was right. This allowance, as to its amount, is fully sustained by the evidence in the cause. And it is authorized by that clause and condition in the mortgage of May 2, 1877, which provides that the appellant "will from time to time, as incurred, pay all charges, costs, and expenses" of the appellees, or either of them, "in and about the execution of the trust," and "will indemnify and hold harmless" the appellees "against all costs, charges, damages, and expenses which they or either of them may sustain or be put to in consequence of accepting this trust, or of anything which may be done or omitted to be done under it, saving only such damages

as may be incurred by or arise from the culpable act or neglect" of said appellees.

> *The decree below is reversed so far as it gives the appellees interest upon the aggregate amount paid by them into the treasury of the State, at the rate of eight per cent. per annum from the time of such payment; and the cause is remanded, with directions to allow interest upon that amount, from the date of payment, at the rate only of six per cent. per annum. In all other respects the decree is affirmed. The appellant will have its costs in this court.*