## PARK v. COMPTON.
### No. 6146.

Circuit Court of Appeals, Fifth Circuit.

Jan. 7, 1932.

Rehearing Denied Feb. 13, 1932.

W. L. Eason and Allan V. McDonnell, both of Waco, Tex., for appellant.

W. W. Naman and Hilton E. Howell, both of Waco, Tex., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

This is an appeal from a judgment allowing a claim of appellee in the bankruptcy proceedings of Air Services, Incorporated, a Texas corporation, over the objection of the trustee. The claim is based on a promissory note for $25,000 which is secured by a vendor's lien, upon 223 acres of land in McLennan county, Tex., transferred to the bankrupt by appellee for the said note and certain shares of stock.

It appears that in October, 1929, F. M. Compton, Reed Compton, E. E. Parkhurst,

and Warren E. Brown entered into an agreement to organize a corporation for the purpose of conducting a landing field, and to operate aeroplanes for carrying passengers and freight, etc. It was agreed that F. M. Compton should transfer the land to the corporation at a value of $90,000, to be paid for $65,000 in stock, and the balance secured by the note in suit. The charter was drawn up for the corporation with a capital stock consisting of 1,000 shares of preferred stock at a par value of $100, and 4,000 shares of common stock without nominal or par value. According to the charter, the stock was subscribed to as follows: F. M. Compton, 433 shares preferred stock, value $43,300, and 3,472 shares of common stock, value $21,700; Reed Compton, 67 shares of preferred stock, value $6,700, and 512 shares of common stock, value $3,200; Warren E. Brown, 500 shares of preferred stock, value $50,000; and E. E. Parkhurst, 16 shares of common stock, value $100. The subscription of F. M. Compton was paid for by the transfer of the property. Reed Compton paid cash for his subscription, as did Parkhurst. Warren E. Brown gave his note, but evidently did not pay anything at all. The incorporators filed with the charterer an affidavit of a disinterested person showing that the value of the land transferred by F. M. Compton was $90,000. The charter was received by the secretary of state and filed on March 6, 1930, and on the same day F. M. Compton executed a deed for the land which was put of record. Thereafter some work was done in clearing and leveling the land, a hangar was erected at a contract price of $12,870, and a few aeroplanes were also purchased. The corporation did not prosper, and was adjudicated bankrupt. The exact date of the adjudication does not appear from the record, but on August 1, 1930, Compton filed his claim on the vendor's lien note. The trustee filed objections. After a hearing, at which considerable evidence was taken, the referee ruled in favor of appellee, and, on appeal to the District Court by the trustee, his ruling was affirmed.

The principal contention of appellant is that the land conveyed was not worth over $33,525, and therefore the acceptance of it at a value of $90,000 for an issue of stock amounting to $65,000 and the note rendered the entire transaction fraudulent and illegal as in violation of article 12, § 6 of the Constitution of Texas, which provides: "No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

In construing the article of the Constitution above set out, the Texas courts have adopted the rule that the section does not require that a corporation shall receive equal value, dollar for dollar, in property received in exchange for stock, and it is sufficient if the amount received bears some reasonable approximation to the amount of indebtedness. Northside Ry. Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 778; Western Supply & Mfg. Co. v. U. S. & Mex. Tr. Co., 41 Tex. Civ. App. 478, 92 S. W. 986; Smith v. Ideal Laundry Co. (Tex. Civ. App.) 286 S. W. 285. In the last cited case, property of the value of $121,000 was exchanged for bonds in the sum of $86,000 and stock in the sum of $100,000, a total of $186,000, a prima facie overvaluation of more than 50 per cent; but the transaction was held to be in good faith and valid. The Supreme Court has adopted the same rule in construing a similar provision of the Constitution of Arkansas. Memphis & Little Rock R. R. v. Dow, 120 U. S. 287, 7 S. Ct. 482, 30 L. Ed. 595.

On the question of the value of the land, the evidence, in substance, was as follows. It was acquired by Compton in 1927 for between $35,000 and $36,000 at what the referee found to be a distress sale. It is situated immediately on the outskirts of East Waco, only a road separating it from the populated portion of that city, and about one mile from the business center of Waco, a thriving city of over 32,000 people. It produced $5000 a year income from pecan trees, and some additional income from various fruits. Three appraisers appointed by the court in the bankruptcy proceedings fixed the value of the property at about $56,000 in their report. On the trial before the referee, they testified that the present value of the property was from $125 to $150 an acre as farm land; but also testified that real estate values were very much depressed. As against this, there was testimony tending to show that land further out had recently sold for $300 per acre; that the property was suitable for subdivision into city lots and could be divided into five lots per acre and sold for $100 per lot; that city lots adjacent to the land in East Waco had recently sold for about $300 a lot, and as much as $500 for corner lots; that it was worth about $250 an acre for use as a dairy and that in close proximity was the Borden Dairy, one of the largest enterprises in Waco; that it was desirable for factory sites, because near a railroad. No one testified to its value as an aeroplane landing field; but there was testimony to the effect

that it was suitable for that purpose and desirable because of its nearness to the business center of Waco.

The price paid for land sold under distress is not usually indicative of its true value. It is reasonable to suppose that the land was worth a great deal more than Compton paid for it. Resolving the testimony of all the witnesses, it is also evident that the appraisement put upon it as farm land, after the failure of the enterprise, and considering the depressed conditions existing, was not a true indication of its value at the time the agreement was made. No doubt the land had a potential value for subdivision into city building lots in excess of $90,000 and greatly more than $35,000 for factory sites.

On the facts shown, the case is stronger for appellee than for the prevailing party in any of the cases above cited. No bonded indebtedness was created on the land. The charter and subscription for stock complied with the law of Texas. Article 1538d, Rev. Civ. Stat. 1925. The secretary of state accepted the value given the property, and his decision is prima facie proof of its value. Peden Iron Co. v. Jenkins (Tex. Civ. App.) 203 S. W. 180. The stock issued was not fictitious and was not sold to the public. There were no creditors in existence at the time the corporation was created, and the issuance of stock did not deprive future creditors of assets to which they might look for payment of their claims. On the contrary, such equity as there was in the land was for their benefit. There is no doubt that all of the parties were acting in entire good faith; no fraud nor concealment was practised by Compton on his fellow stockholders or the public, and the incorporators believed the land to have the value given it for the purpose for which it was to be used. They were as competent to make that estimate as any outsider.

Giving effect to the conditions existing at the time the corporation was organized and the land transferred, in view of the purpose for which it was to be used, we conclude that its reasonable value was sufficient to support the transfer of the stock to appellee, and give consideration to the note. See Grant v. East & West R. Co. (C. C. A.) 54 F. 569. Other contentions of appellant are without merit and require no discussion.

Affirmed.

PER CURIAM.

The petition for rehearing in the above numbered and entitled cause is denied.

SIBLEY, Circuit Judge (concurring).

A purchase-money note for $25,000 was sought to be proved against the estate in bankruptcy. The referee held the only issue to be whether the land transferred to the corporation was at the time of transfer reasonably worth the amount of the note given for and secured by it, and answered the question yes. The District Judge affirmed that holding. I do not understand that any question is here presented as to whether the value of the land was also sufficient to pay the stock subscription of the transferrer. Thus understanding, I concur in the judgment.