[Civil No. 4753.   Filed November 19, 1945.]

[163 Pac. (2d) 683.]

ZEFF C. PRINA, Appellant, v. UNION CANAL & IRRIGATION COMPANY, a Corporation, ROY A. LAYTON, C. M. PURSLEY, REECE GREEN, ELDON PALMER, and TED NORTON, Appellees.

Mr. John W. Ross, for Appellant.

Mr. Guy Anderson, Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellees.

WINDES, Superior Judge.—In the early year of 1891 the Union Canal and Irrigation Company was incorporated for the purpose of distributing irrigation water to the farmers in and around Safford, Arizona. It issued 1,000 shares of stock with a par value of $25. There is some confusion about the exact methods of the operation of this company, but in any event it did not deliver water to its users on an acreage basis, but rather on a corporate stock basis. Until about 1918 the plaintiff was getting his water through another ditch, the Sunflower. These facilities were destroyed by flood and he then began securing the delivery of water through the Union Canal, purchasing from time to time a few shares of stock. Eventually, in the year 1935 the question of the respective priorities of the water users came before the Federal District Court in Arizona and their individual rights and priorities were adjudicated. This adjudication rendered it necessary to make water deliveries according to such priorities rather than according to stock ownership in the company.

Presented with this situation, a meeting of the stockholders of the Union Canal and Irrigation Company was called for April 12, 1938, at which the plaintiff was present and participating. At this meeting it was suggested that in order for the water to be distributed on an acreage rather than a share basis the company

would be reincorporated for 8,000 shares of capital stock and would issue one share for each acre of land under the canal, and a motion was made and unanimously carried to this effect. It was determined that the old shares be surrendered and a new issue of equivalent value be made, each holder to receive 7.4 new for each one of the old. This plan would leave some of the stockholders with more stock and some with less than they needed on an acreage basis. At this meeting the following also transpired: Upon a motion seconded by the plaintiff herein it was proposed that the distribution of the water be changed from a share to an acreage basis and declared that it was the intention that all stockholders having excess stock have the same valued at approximately $260 per share under the old stock structure or $35 per share under the new stock structure. There was also presented by plaintiff and passed a motion authorizing directors to make an equitable agreement and adjustment with the Sunflower Canal Company. It is very apparent from the foregoing that the defendant company was required to revamp its method of water delivery and it was recognized in so doing that, because of the unequal ownership of stock under the new setup, justice demanded some adjustment be made between what is called the long and short stockholders.

The new corporation was organized in accordance with the above plan and its articles provided it should be a nonprofit corporation. A plan was devised for making the adjustment contemplated at the foregoing stockholders meeting and that plan was by this court declared illegal. *Olsen* v. *Union Canal & Irrigation Co. et al.,* 58 Ariz. 306, 119 Pac. (2d) 569.

Following the Olsen decision the stokholders held another meeting and passed a resolution providing in effect that the board of directors place a fair value on the property of the company as of June 4, 1938; that

it issue 6% bonds or certificates of indebtedness to each stockholder for the proportionate part of the value of the property represented by the number of shares held, and that the outstanding shares be exchanged for new shares reciting they represent only a proportionate interest in the property of the corporation. Thereafter the board of directors met and by resolution declared that the value placed on the stock of the old company of $260 per share at the stockholders meeting of April 12, 1938, fairly represented the value of the physical properties of the company and proceeded to fix the value of such property on this basis. The board of directors then proceeded to carry out the plan by the issuance of certificates of indebtedness and the new stock. The plaintiff seeks an injunction which was by the trial court denied. The parties will herein be referred to as plaintiff and defendant.

Stripped of the many complications, an effort is being made by this company to require the various water users to make their proportionate investment in the property of the company committed to their service in proportion to the service rendered and acreage served. The canal system and all the properties rendering this service belong to the stockholders of the original company. Under the present situation it is required to make water deliveries to some appropriators, the plaintiff included, out of proportion to the stock owned or investment made. The unfairness of this situation was recognized at the reincorporation meeting of April 12, 1938, when the new method of service was authorized, and the plaintiff presented the motion authorizing the board of directors to make an equitable adjustment with the Sunflower Company. The Sunflower Company was the company which served the plaintiff before he began to avail himself of defendant's facilities.

■■ It is apparent therefore that the plaintiff, being a participant in these matters, has committed

himself to the organization of a corporation designed to deliver water on an acreage basis and has committed himself to some scheme that would make some equitable adjustment between the long and the short stockholders. It is true that because of the history of the company and subsequent court decisions the plaintiff is entitled to use the facilities of this company for the delivery of water, but not necessarily upon his own terms. If he gets his water service upon the same terms as all other users he is getting substantially that to which he is entitled. If things remain *status quo,* he is getting a more advantageous deal than the long stockholders. He is getting the same service for less investment and is asking a court of equity by injunction to preserve this position. A court of equity does not so use its powers. The plaintiff is not in such a position as to stimulate the conscience of the court into aiding him in preserving a situation that will not produce equality of burden. The plaintiff has heretofore recognized that old stockholders are entitled to some equalizing adjustment. He offers none and in fact it is apparent from the whole case he desires to evade the obligation in this respect. ''He who seeks equity must do equity'' is one of the oldest maxims of the legal profession.

The plaintiff leans heavily upon Olsen v. Union Canal and Irrigation Company, *supra,* and the principles announced therein to the effect that defendant is a public service company. Whether under the issues presented in the Olsen case the company was a public service corporation as originally organized and existing is immaterial to our consideration of the present case. Since the organization of the new corporation in 1938 and during the period subsequent to that covered by the Olsen case, from the pleadings and the evidence here, it is not engaged in serving the public, but only its members as a nonprofit corporation. As alleged by

the plaintiff, it is a mutual irrigation company and such a company is not "furnishing water for irrigation" in the sense that this term is used in Sec. 2, Art. 15 of the Arizona Constitution. In fact, it is doubtful whether the Constitution could make it such without running counter to the United States Constitution. *Allen* v. *Railroad Commission,* 179 Cal. 68, 175 Pac. 466, 8 A. L. R. 249.

It is strenuously urged that the certificates of indebtedness proposed to be issued offend Sec. 6, Art. 14 of our Constitution. This section prohibits a corporation from issuing obligations for the payment of money except for money or property received and prohibits the creation of fictitious indebtedness. The purpose of this provision is to protect creditors, to prevent the distribution of worthless securities, and to protect the stockholders against spoliation. *Memphis, etc., R. R. Co.* v. *Dow,* 120 U. S. 287, 7 Sup. Ct. 482, 30 L. Ed. 595. No such situation exists here. In effect the new company is purchasing the property of the old company at a recognized fair value and issuing nonnegotiable obligations therefor. The indebtedness is not fictitious, no creditors' rights are involved, and the stockholders are in no way defrauded.

For the foregoing reasons the judgment is affirmed.

STANFORD, C. J., and MORGAN, J., concur.

LaPRADE, J., being disqualified, the Honorable DUDLEY W. WINDES, Judge of Superior Court of Maricopa County, was called to sit in his stead.