IN RE MID-VALLEY CONTRACTING CO.

(No. 44450—Decided June 4, 1970.)

United States District Court, Southern District of Ohio, Western Division.

*Mr. Owen C. Neff*, for United Bonding Insurance Company.
*Mr. Louis R. Schear*, for trustee in bankruptcy.

PELLMAN, Referee in Bankruptcy. This cause came on for consideration of the petition of First National Bank of Middletown, Ohio (hereinafter referred to as the Bank), for an order requiring the Trustee in Bankruptcy to turn over to it specific sums of $5,577.19 and $1,824.00 and United Bonding Insurance Company's (hereinafter referred to as United) answer and cross-complaint asserting that its claim to the funds in the hands of the Trustee is superior to the claim of the Bank. The matter was submitted to the court on briefs filed by the opposing claimants.

FACTS

1. Bankrupt filed its voluntary petition on January 18, 1966.

2. Bankrupt had been engaged in the business of "plumbing, heating and sheet-metal contracting."

3. At the time of bankruptcy there were incompleted contracts in progress, some of which were bonded by United as surety.

4. In December 1964, the bankrupt and United executed an indemnity agreement which provided, in part:

"6. If any said bond(s) be given in connection with a contract; the Indemnitor(s) do hereby assign, transfer and set over to the Company, such assignment to become effective as of the date of said bond(s) but only in event of default thereunder;

"a. All their right, title and interest in and to all machinery, plant, tools and materials which are now or may hereafter be upon the site of the work embraced in such contract; or elsewhere for the purposes thereof including all materials purchased or ordered for said contract, whether such materials be completely manufactured or not;

"b. All their right, title and interest in and to any and all sub-contracts let or which may be let in connection with such contract;

"c. Any and all percentages of the contract price retained on account of said contract, and any and all sums that may be due under said contract at the time of such default, or that may thereafter become due;

"d. All their rights in and growing in any manner out of said contract or said bond or bonds.

"e. Default as used herein shall include but not be limited to failure, refusal or inability to complete the work in accordance with the terms of the contract, a breach of the contract, or a failure to discharge liabilities arising under the contract when due."

5. On June 11, 1965, in consideration of extension of credit by the Bank, the bankrupt executed a security agreement in which it assigned to the Bank a security interest

in the bankrupt's "accounts receivable and contract rights now or hereafter received, by or belonging to the debtor for goods sold or for services rendered and in the proceeds thereof."

6. The Bank filed a copy of its said financing statement with the Secretary of State of Ohio, on June 12, 1965, and with the Recorder of Butler County, Ohio, on June 14, 1965.

7. United asserts that it performed work and paid debts on behalf of the bankrupt under the terms of its bond.

8. United did not perform any work nor did it make any payments on behalf of the bankrupt on either the Huffman-Wolfe job or the Lebanon Police and Fire Station job.

9. The Trustee received $5,577.19 as money owing to the bankrupt from the Huffman-Wolfe job and $1,824 from the Lebanon Police and Fire Station job.

10. The Trustee has remaining on hand after deducting the costs of administration an amount in excess of the claims of the Bank.

CONCLUSIONS OF LAW

The Bank claims a security interest in the proceeds from two contracts neither of which were performed by United under the obligation of a bond. United claims precedence over the security interest of the Bank by reason of its indemnity agreement with the bankrupt and its obligation to perform work and pay debts on the defaulted contracts of the bankrupt company. No report of the actual work performed or the specific debts paid by United on behalf of the defaulting contractor has been submitted to the Trustee. It is the position of United that it is entitled to all the assets of the bankrupt as long as the bankrupt corporation defaulted on any of its contracts. Its position is stated at page 9 of its brief in the following language:

"In the instant case Mid-Valley Contracting Company *defaulted.* By the terms of the contract and by operation of law, it thereafter is denied the right to recover the fund. This leads to the following inescapable conclusions:

1. No asset passed, enured or vested in the Trustee.

2. The United Bonding Insurance Company as surety takes by subrogation having *obligated* itself to perform in place and stead of the contractor.''

It is settled law since the decision in *Pearlman* v. *Reliance Ins. Co.* (1962), 371 U. S. 132, that when a surety *meets* its obligation on a contract bond by paying the claims of laborers and material men, it subrogates to whatever rights the owner, contractor, laborers and material men had in the funds to the extent necessary to reimburse it. The court went on to state, in effect, that the right of subrogation is an equitable doctrine, which entails the right of a surety who *pays* the debt of another to all the rights of the person the surety *paid* to enforce the right to be reimbursed.

In *Memphis & L. R. R.* v. *Dow,* 120 U. S. 287, the court held:

"The right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties."

Neither the *Pearlman* nor the *Memphis & L. R. R. case* draws any lines of limitation on the extent to which the surety may look for reimbursement. However, in a later case decided in 1966 by the United States Court of Appeals, 4th Circuit (*Western Casualty & Surety Co.* v. *Brooks,* 362 F. 2d. 486), the court limited the scope of the surety's rights to reimbursement to the assets realized from each contract separately. In that case the issue arose in a bankruptcy proceeding and involved the right of a surety on two public construction contracts, both *performed* by the same contractor, to set off losses incurred on one bond with excess realized on the other. The Court of Appeals in sustaining the District Court held that the surety had no right to offset losses on one contract against payments received on another. It states in its opinion:

"The doctrine of subrogation arises out of the unpaid debts on *each contract;* relates back in time to the execu-

tion of that specific bond and is *limited in scope to the debts arising under one contract.*"

In the opinion of this court the equitable right of subrogation does not exist until work is actually performed or debts are actually paid by a surety. It is a right to reimbursement for losses sustained, not contemplated. Therefore, all of the assets of a bankrupt contractor come under the control of the bankruptcy court until the surety can establish and substantiate the amount of loss it is entitled to recover by way of subrogation. For reimbursement it can look only to assets embraced in each contract separately. (*Western Casualty & Surety, supra.*)

If "No asset passed, enured or vested in the Trustee," as is contended by United, the surety would be the sole judge in applying losses on one job against profits on another. If the performance of all defaulted contracts resulted in a profit to the surety, how would the excess be distributed to creditors without some control vesting in the Bankrupty Court?

In the instant case the Huffman-Wolfe contract and the Lebanon Police and Fire Station contract each resulted in a profit which was realized by the Trustee in Bankruptcy, subject to the security interest of a third party, either United or the Bank. If a surety cannot apply profit on one job against loss on another, the profit realized on those particular contracts by the Trustee is not subject to any claim of the surety by reason of subrogation.

Therefore, the security interest of the Bank in the proceeds realized by the Trustee from the Huffman-Wolfe contract and the Lebanon Police and Fire Station contract is superior to the claim of United.

### ORDER

It is ordered that the Trustee distribute to the First National Bank of Middletown, Ohio, the amounts of $5,577.19 and $1,824, less the deduction of a reasonable and equitable amount to be assessed against the Bank as its share of the costs of administration in this proceeding, to be determined upon hearing and notice to the parties in interest.