*976 GOULD, Circuit Judge,
dissenting:
I respectfully dissent. The majority provides a reasoned explication of why statutory subrogation under section 112(c), 42 U.S.C. § 9612(c), does not apply. But the majority’s analysis of section 107(a), 42 U.S.C. § 9607(a), does not honor Chubb’s right to equitable subrogation, which allows Chubb to stand in the shoes of Taube-Koret.
“Equitable subrogation is a broad equitable remedy,” Mort v. United States, 86 F.3d 890, 894 (9th Cir.1996), that for centuries has been recognized by courts. See generally M.L. Marasinghe, An Historical Introduction to the Doctrine of Subrogation: The Early History of the Doctrine II, 10 Val. U.L.Rev. 275 (1976). It “arose as a ‘creature of equity’ and ‘is enforced solely for the purpose of accomplishing the ends of substantial justice.’ ” Hamada v. Far E. Nat’l Bank (In re Hamada), 291 F.3d 645, 649 (9th Cir.2002) (quoting Memphis & L.R.R. Co. v. Dow, 120 U.S. 287, 302, 7 S.Ct. 482, 30 L.Ed. 595 (1887)). A good explanation of the equitable right of subrogation can be found in Dobbs’s treatise on the Law of Remedies:
Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person’s rights against the defendant. Factually, the case arises because, for some justifiable reason, the subrogation plaintiff has paid a debt owed by the defendant. Having paid the defendant’s creditor, the plaintiff stands in the creditor’s shoes, becomes the real party in interest, and is entitled to exercise all the remedies which the creditor possessed against the defendant.
1 Dan B. Dobbs, Law of Remedies: Damages-Equity-Restitution § 4.3(4), at 604 (West Publishing 2d ed. 1993) (quotations and footnotes omitted). Applying this “well-settled rule” of equitable subrogation, I would hold that we should recognize the right of an insurer to equitable subrogation once it has reimbursed a landowner for remediation expenses that in fairness should have been borne in part by others. See United States v. Bestfoods, 524 U.S. 51, 63, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (applying a “well-settled rule” of corporate common law in the CERCLA context); see also Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc., 159 F.3d 358, 362-63 (9th Cir.1998) (applying “traditional rules” of successor liability under CERCLA).
Taube-Koret paid cleanup expenses that should have been borne in part by Ford, Chevron, Sun Microsystems, Inc., and others who polluted and contaminated the property. The majority reasons that because Chubb reimbursed Taube-Koret’s cleanup expenses and did not directly incur those costs, it does not meet the definition of “any person” under section 107(a). 42 U.S.C. § 9607(a). But the regime of law mandated by the majority is contrary to CERCLA’s intent to make polluters pay. See Burlington N. & Santa Fe Ry. Co. v. United States, 556 U.S. 599, 602, 129 S.Ct. 1870, 173 L.Ed.2d 812 (2009) (stating that CERCLA was “designed ... to ensure that the cost of such cleanup efforts were borne by those responsible for contamination”). Here, Chubb is left with the bill while the polluters pay nothing.
It should not matter that the statutory subrogation remedy elements are not satisfied under section 112(c). There is no showing that Congress intended this type of subrogation to be exclusive — no showing that Congress intended to eliminate consideration of equitable subrogation. See Bestfoods, 524 U.S. at 63, 118 S.Ct. 1876 (explaining that a federal statute does not “abrogate a common-law principle” unless it “speak[s] directly to the question addressed by the common law” (quoting *977 United States v. Texas, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993))). Indeed, if Congress spoke to the issue at all it was to maintain this common law right. See 42 U.S.C. § 9607(e)(2) (stating that “[n]othing in this subchapter ... shall bar a cause of action that an owner or operator or any other person subject to liability under this section, or a guarantor, has or would have, by reason of subrogation”). At most the statute is ambiguous, and it is within the power of our court to give it a sensible construction in light of CERCLA’s purpose.[1]
The district court and the majority give credence to the argument that permitting a subrogation claim under section 107(a) renders section 112(c) a nullity, but I disagree. In United States v. Atlantic Research Corporation, the Supreme Court recognized that CERCLA allows for complementary remedies that provide causes of action “to persons in different procedural circumstances.” 551 U.S. 128, 139, 127 S.Ct. 2331, 168 L.Ed.2d 28 (2007). Sections 112(c) and 107(a) provide for such complementary remedies. Allowing a sub-rogation claim under section 107(a) gives Chubb a remedy where one is otherwise not permitted under section 112(c) and where subrogation serves the purposes of CERCLA. If Taube-Koret had made explicit claims against Ford, Chevron, and Sun Microsystems, Inc., and Chubb had then reimbursed a “claimant,” there would be no question that Chubb would be entitled to proceed under section 112(c). But where an insurance company reimburses an insured party that incurred cleanup costs but has not asserted claims against potentially responsible parties, in my view, the proper remedy is under section 107(a). To deny this is detrimental to CERCLA. It is the actions of the insured, and not the insurer, that determine the procedural circumstances of the subrogation claim and dictate the proper statutory remedy. See Atl. Research, 551 U.S. at 139, 127 S.Ct. 2331. That there is some overlap between these two remedies is not fatal. See id. at 139 n. 6, 127 S.Ct. 2331. In either event, there should be a subrogation remedy available to an insurance company that has paid for a cleanup by reimbursing its insured.
The scheme of law adopted by the majority may be able to decide this particular ease by characterizing the actions of the insurer’s legal counsel as too little and too late. This view is inaccurate and reflects the majority’s failure to implement a fair procedure of subrogation in a way that is called for under section 107(a). Also, in the long run, one cannot expect insurers to indemnify companies for pollution cleanup costs without charging an insurance premium reflecting the risk of monetary loss and that risk will necessarily increase if the insurer cannot seek contribution from prior polluters and property owners. Either insurance premiums for an organization like Taube-Koret will go up dramatically, raising questions on feasibility of insurance, or the policies will condition payment on a prior claim by the insured against other contributors to the pollution. This *978 will discourage or delay cleanups, putting public health and safety at risk and undermining the purpose of CERCLA. See Burlington N. & Santa Fe Ry. Co., 556 U.S. at 602, 129 S.Ct. 1870 (explaining that CERCLA was “designed to promote timely cleanup of hazardous waste sites” (quotations omitted)). So the majority’s ruling here will have the unfortunate and predictable impact of impeding cleanup efforts that benefit the public.[2]

. It is true, as the majority notes, that Bestfoods and Atchison adopted well-settled common law in areas where CERCLA was silent on the issue. See Bestfoods, 524 U.S. at 62-63, 118 S.Ct. 1876, Atchison, 159 F.3d at 363. And it is true that CERCLA's silence is dispos-itive on Congress’s intent to adopt well-established common-law principles. See Bestfoods, 524 U.S. at 70, 118 S.Ct. 1876. But it does not plainly follow, especially in light of the statute’s ambiguous language, that CERCLA’s discussion of subrogation under section 112(c) is evidence of a contrary intent sufficient to overcome the "lenient presumption" that Congress "legislate[s] against a background of common-law ... principles.” Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 108, 112, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

. Congress can rectify this result for future cases by modifying their statutory language in a way that would satisfy the majority. But for practical reasons, we cannot assume that corrective legislative action will promptly arrive. As Sir Frederick Pollock explained long ago, though in a different context, "legislative methods and procedure being what they are and must be, it is for the most part idle to count on legislation for this [corrective] purpose.” Sir Frederick Pollock, A First Book of Jurisprudence: For Students of the Common Law 310 (Burt Franklin 1970). If the statutory language really commanded the position taken by the majority, I would of course abide it. But in my view, the ambiguous statutory language permits a more sensible result than that taken by the majority.