**GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., Plaintiff,**

v.

**Theodore RICHARDSON, et al., Defendants.**

**Civil Action No. 95–1048(JR).**

United States District Court, District of Columbia.

Nov. 15, 1996.

---

John J. Brennan, III, Robert Clayton Cooper, Jackson & Campbell, P.C., Washington, DC, for plaintiff.

Stanley P. Kaplan, Miami, FL, for defendants.

## MEMORANDUM

ROBERTSON, District Judge.

This case presents a claim by a group health insurer for reimbursement of $140,003.99 it paid to Howard University for the hospitalization of defendant Theodore Richardson. Plaintiff Group Hospitalization and Medical Services Inc. (Blue Cross/Blue Shield or BCBS) claims that Richardson and his next friend recovered those expenses from Howard in a malpractice action and that BCBS is entitled to reimbursement by way of subrogation. Cross-motions for summary judgment have been presented. This memorandum explains the Court's decision to deny both motions, because (1) notwithstanding defendants' objections based on lack of diversity and ERISA preemption, this Court does have subject matter jurisdiction, and (2) BCBS has not demonstrated either that a participant in a group health insurance program has a contract-based duty to reimburse his medical expenses if he later recovers them in litigation, or that this participant was unjustly enriched by refusing to make reimbursement from his litigation recovery.

*Facts*

BCBS contracted with Howard University to provide health care services to Howard's employees effective October 1, 1980. Theodore Richardson became an employee of Howard University on April 10, 1989, and became an enrolled participant under the

BCBS health care services contract on June 1, 1989. In March 1990, Richardson was treated for swollen glands at Howard University Hospital. He suffered a serious allergic reaction to the treatment he received and was hospitalized from March 26, 1990 until July 17, 1990. BCBS paid Howard University Hospital a total of $140,003.99 for Richardson's medical care during that period.

In March 1993, Richardson and his next friend Louise Dargans–Fleming filed a medical malpractice action against Howard University and the physicians who had treated Richardson for swollen glands. The complaint demanded $30 million in damages, including an unstated amount for "medical and related expenses for hospital costs [and] physician costs" resulting from the alleged malpractice. The malpractice suit was settled in March 1994 for $1,250,000.

BCBS, asserting that Richardson and Dargans–Fleming had recovered Richardson's medical expenses in the settlement, made a subrogation demand for reimbursement of the $140,003.99 that it had paid to Howard. The demand was refused, and this action followed.

*Jurisdiction*

Defendants present two challenges to this Court's subject matter jurisdiction. First, they argue that plaintiff has failed to establish complete diversity. Second, they assert that Howard University's health care plan is a plan subject to the provisions of the Employee Retirement Income Security Act ·of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* and that plaintiff's suit is preempted.

■■■ a. *Diversity.* It is undisputed that plaintiff is a citizen of the District of Columbia, where it has its principal place of business, 28 U.S.C. § 1332(c), and that defendant Dargans–Fleming is a citizen of Florida. What is disputed is plaintiff's assertion that Richardson is also a citizen of Florida. The burden of establishing diversity lies with plaintiff. *Cameron v. Hodges,* 127 U.S. 322, 8 S.Ct. 1154, 32 L.Ed. 132 (1888). The citizenship of a party for purposes of diversity is determined at the time the action is filed. *See Freeport–McMoRan, Inc. v. KN Energy, Inc.,* 498 U.S. 426, 111 S.Ct. 858, 112 L.Ed.2d

951 (1991). Plaintiff relies upon two documents. The first is the malpractice complaint Richardson and Dargans–Fleming filed in March 1993, which recited that Richardson was a resident of Florida. The second is answers to interrogatories, completed in the malpractice case, listing a Florida address as Richardson's residence. Defendants have submitted no documentation or affidavits refuting this information. Nor do defendants proffer any evidence suggesting that Richardson changed his residence between March 1993 and the date this case was filed. Plaintiff has sustained its burden of establishing that Richardson was a citizen of Florida when this action was filed, and this court has subject-matter jurisdiction on the basis of diversity. 28 U.S.C. § 1332.

■■■ b. *ERISA.* Defendants argue that, because the health services contract creates a "plan" subject to ERISA, any state common law cause of action is preempted and plaintiff may only bring its action under ERISA's umbrella. If plaintiff's health care services contract with Howard is a plan under § 3(1) of ERISA, 29 U.S.C. § 1002, ERISA's broad enforcement provisions preempt a state common law cause of action for breach of contract. *Shaw v. International Assn. of Machinists and Aerospace Workers Pension Plan,* 563 F.Supp. 653, 658–59 (C.D.Cal.1983), *aff'd* 750 F.2d 1458 (9th Cir.), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985). Plaintiff declines to be drawn into a debate about what is or is not an ERISA plan. Its position is that, even if the health care plan is a plan subject to ERISA, plaintiff may nevertheless bring a breach of contract action based on federal common law. Under 28 U.S.C. § 1331, the federal courts have federal question jurisdiction over civil actions arising under federal common law. Congress intended that the federal courts create federal common law regarding ERISA. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). The existence of a federal common law remedy for refusal to honor a subrogation agreement cannot be doubted, *see Provident Life & Accident Insurance Co. v. Waller,* 906 F.2d 985 (4th Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct.

512, 112 L.Ed.2d 524 (1990). This Court accordingly has federal question jurisdiction as well as diversity jurisdiction.

## Merits of BCBS Subrogation Claim

■ Having paid the $140,003.99 medical bill for Richardson's hospitalization, BCBS asserts a subrogation right to $140,003.99 of the money Richardson recovered from Howard.

"The right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties." *Memphis & L.R.R. Co. v. Dow,* 120 U.S. 287, 301–02, 7 S.Ct. 482, 488–89, 30 L.Ed. 595 (1887), quoted in *Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 137 n. 12, 83 S.Ct. 232, 235 n. 12, 9 L.Ed.2d 190 (1962). "Subrogation is the substitution of one person in the place of another with reference to a lawful claim, demand, or right so that the substituted party succeeds to the rights of the other." BLACK'S LAW DICTIONARY 1427 (6th ed. 1990), quoted in *National Union Fire Ins. Co. v. Riggs National Bank,* 646 A.2d 966, 968 (D.C.App. 1994). "Where one party has paid the debt of another, justice requires that the payor be able to recover his loss from the one who should have paid it, to prevent unjust enrichment.... The rights of the party who paid the debt in no way depend upon showing a contract provision or formal assignment; evidence of payment is sufficient." *Id.*

BCBS has not established its entitlement to traditional, equitable subrogation on this record. It is not clear that the $140,003.99 BCBS paid was a "debt" of Richardson, or that Richardson "should have paid it," or that "unjust enrichment" would result if Richardson were not required to make reimbursement. Serious factual weaknesses in the BCBS case are evident from the record. The record does not establish that the $140,-003.99 was included in the amount Howard paid to Richardson to settle the malpractice claim. It is true that Richardson's complaint sought recovery for "medical and related expenses for hospital costs [and] physician costs," but the settlement was for an undif-ferentiated lump sum. It is a reasonable inference from the record that both Howard and Richardson decided to forget about the medical bills in the negotiations that whittled Richardson's $30 million demand down to the $1,250,000 settlement. Certainly there is no evidence that Howard presented a bill to Richardson, nor has BCBS responded to Richardson's denial that he filed any claim to BCBS for reimbursement of expenses for medical care at Howard.

BCBS has presented its claim, however, as one for breach of a written contract, and not as a claim for unjust enrichment. The contract in question is the BCBS agreement to provide group health care coverage for Howard employees. It contains the following subrogation clause:

> To the extent that benefits for covered services are provided or paid under this Contract, the Corporations [Group Hospital] shall be subrogated and succeed to any rights of recovery of a participant for expenses against any persons or organizations except insurers on policies of health insurance issued to and in the name of the participant. The participant shall pay the Corporations all amounts recovered by suit, settlement, or otherwise from any third party or his insurer to the extent of benefits provided or paid under this Contract.

The second sentence of that clause does not appear to depend on the existence of a "debt" or require a finding that the money sought by way of subrogation "should have been paid." Instead, if "amounts [are] recovered by suit, settlement, or otherwise from any third party," the subrogation clause provides that the Participant "shall" pay them over to BCBS "to the extent of benefits provided or paid under this Contract."

The BCBS contract claim has at least two serious deficiencies. The first is that the record fails to establish that the $140,003.99 of benefits for which BCBS claims reimbursement were "provided or paid under this Contract." Defendants' argument is that benefits under the group contract are payable only if a "written claim" is submitted by a plan Participant, citing Art. III ¶ 8(b) and Art. IV ¶ 5(a). That argument, as stated, is

hyper technical and probably wrong: the cited provisions of the plan do not exclude the possibility that monies might be "provided or paid under [the] Contract" without a "written claim." But BCBS has not shown that Richardson had anything to do with the claim it paid. The record leaves unrefuted the reasonable inference, referred to above, that Howard waived Richardson's medical bill. Exactly how BCBS decided to pay Howard, and for what, is not spelled out on this record. The record, in other words, does not establish that the $140,003.99 was "provided or paid under [the] Contract."

■ The second problem with the BCBS contract theory is the absence from this record of any evidence that Richardson agreed to be bound by the subrogation clause. The parties to the group contract are BCBS and Howard. BCBS maintains that the contract binds "Participants" and that Richardson was a "Participant." A "Participant" is defined, however, only as "[a]ny person covered under this Contract as provided by Article II hereof," and Article II deals only with eligibility. Richardson's signature on several enrollment forms has no contractual significance, because the forms neither make reference to the (constantly changing) terms of the underlying group contract nor contain any words of agreement. The subrogation clause may establish the primacy of BCBS's rights over Howard's in case a third party shows up with funds for payment of medical expenses. As it relates to Mr. Richardson's situation, however, the subrogation clause adds nothing to the non-contractual, equitable right of subrogation outlined in *National Union Fire Ins. Co., supra.*[1]

For these reasons, the motion of BCBS for summary judgment on its subrogation claim must be denied.

*Remaining Issues*

The denial of BCBS's motion for summary judgment as to its subrogation claim does not require that defendants' cross-motion for

summary judgment be granted. It is possible that BCBS could overcome the factual deficiencies of its case that are noted above.

The denial of both motions for summary judgment also leaves for another day the second count of BCBS's second amended complaint, which alleges that, had Richardson and his next friend provided reasonable cooperation, information and assistance with respect to BCBS's efforts to enforce their rights, BCBS might have been able to recover against unidentified "third parties." This claim asserts a breach of fiduciary duty allegedly owed "under the Contract" and may have some of the same weaknesses as the subrogation claim, but it has not been addressed by the motions of either party and accordingly has not been disposed of.

---

1. BCBS advances the additional argument that Richardson's next friend signed a release, as part of the settlement, agreeing to indemnify Howard and save it harmless from claims, including "claims ... of health care insurers ... arising out of the subject incident...." That release does not advance BCBS's subrogation claim. It would support a claim for indemnification *by Howard,* but BCBS has apparently made no claim against Howard as to which Howard needs to be indemnified.