**W.L. MENG, et al., Plaintiffs,**

v.

**Bernard SCHWARTZ, et al., Defendants.**

**No. CIV.A. 01–1715.**

United States District Court, District of Columbia.

Feb. 6, 2004.

See also 116 F.Supp.2d 92.

---

Larry Elliot Klayman, James F. Peterson, Paul J. Orfanedes, Judicial Watch, Incorporated, Washington, DC, for Plaintiffs.

John Joseph Halloran, Jr., Speiser Krause, Arlington, VA, David P. Murray, Willkie, Farr & Gallagher, LLP, Joseph E. Sandler, Sandler, Reiff & Young, P.C., Robert Felix Bauer, Marc Eric Elias, Perkins, Coie, LLP, David Evan Kendall, Williams & Connolly, Mary Hampton Mason, Department of Justice, Steven Mark Salky, Zuckerman, Spaeder, LLP, John Christopher Keeney, Jr., Hogan & Hartson, L.L.P., Washington, DC, for Defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Now before the Court are the defense motions to dismiss the Plaintiffs' Amended Complaint.[1] Specifically before the Court are Defendants Democratic National Committee (hereinafter "DNC"), DNC Services Corporation (hereinafter "DNC Services"), Democratic Senatorial Campaign Committee, Inc. (hereinafter "DSCC"), and Democratic Congressional Campaign Committee, Inc's (hereinafter "DCCC") Motion To Dismiss For Failure To State a Claim Upon Which Relief Can Be Granted; Defendants Albert Gore, Jr., Samuel R. Berger, Alexis Herman, Harold Ickes and

---

1. Loral Space and Communications, Ltd. is also named as a defendant and has filed a Motion To Dismiss that has been adopted by all of the defendants. However, on July 15, 2003, Loral Space and Communications, Ltd. filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (Case No. 03–41710(RDD)) under Chapter 11 of Title 11 of the United States Code. Accordingly, this action was automatically stayed pursuant to 11 U.S.C. § 362(a). Therefore, the respective dispositions of the instant case, apply to all defendants except Loral Space and Communications, Ltd. A separate order on this matter shall issue this date.

Melissa Moss' Motion To Dismiss; Defendant John Huang's Motion To Dismiss the Amended Complaint; Defendant Marvin Rosen's Motion To Dismiss the Amended Complaint; Defendants William J. Clinton and Hillary R. Clinton's Motion To Dismiss the Amended Complaint; and defendant Bernard Schwartz's Motion to Dismiss the Amended Complaint. Also before the Court are the Plaintiffs' Oppositions To All Motions To Dismiss and the Defendants' Reply Memoranda to the Plaintiffs' Oppositions.

Upon consideration of the foregoing motions, the applicable law, and the record in this case, the Court will GRANT the Defendants' Motions to Dismiss for the reasons stated herein.

## BACKGROUND

The plaintiffs are shareholders of defendant Loral Space and Communications, Ltd. (hereinafter "Loral Space"), and respectively reside in Virginia and Maryland. The plaintiffs allege that defendant Bernard Schwartz, Chairman of the Board and Chief Executive Officer of defendant Loral Space, made unlawful campaign contributions to the Clinton Administration and various democratic organizations in exchange for favorable trade policies, and then sought and obtained reimbursement from Loral Space for the amount of the unlawful contributions. The plaintiffs maintain that this conduct gives rise to four causes of action, namely: (1) breach of fiduciary duty; (2) negligence; (3) civil conspiracy; and (4) unjust enrichment.

The plaintiffs first made allegations similar to those in the instant complaint in a

prior action filed on November 24, 1998 (hereinafter "Meng I"). The Meng I complaint named over fifteen defendants, including Loral Space, Loral Space CEO Bernard Schwartz, President Bill Clinton, Vice President Al Gore, the Democratic National Committee, Hillary Rodham Clinton, Harold Ickes, Melissa Moss, Alexis Herman, Marvin Rosen, Samuel Berger, John Huang, the Democratic Senatorial Campaign Committee, the Democratic Congressional Campaign Committee, several John and Jane Does, and Terrence R. McAuliffe.

Based on the same conduct alleged in the instant complaint, the Meng I complaint invoked the Court's federal question jurisdiction, alleging a count under the federal civil Racketeer Influenced Corrupt Organization statute (hereinafter "RICO") and attaching four pendant state law claims of breach of fiduciary duty, negligence, civil conspiracy, and unjust enrichment. In response to the Meng I complaint, the defendants filed motions to dismiss, essentially maintaining that even if the defendants committed the alleged RICO violations, the plaintiffs could not prove, under any set of facts, that those violations proximately caused their purported harm.

On September 25, 2000, relying on the RICO statute requirements, the Supreme Court's interpretation of the RICO causation standard in *Holmes v. Securities Investor Protection Corp.*,[2] and the Second Circuit's distillation of *Holmes*,[3] this Court dismissed the plaintiffs' federal RICO count for failure to state a claim pursuant to Rule 12(b)(6) upon finding that the de-

2. 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (holding that the RICO statute has a proximate cause requirement).

3. *See In re American Exp. Co. Shareholder Litigation*, 39 F.3d 395, 400 (2d Cir.1994)

(establishing the "intended target" requirement); *Abrahams v. Young & Rubicam, Inc.*, 79 F.3d 234, 239 (2d Cir.1996) (citing *American Express* for its "intended target" proposition).

fendants' alleged RICO violations were not the proximate cause of the plaintiffs' alleged injuries. *See Meng v. Schwartz,* 116 F.Supp.2d 92, 97 (D.D.C.2000). The Court then dismissed the remaining supplemental claims for lack of subject matter jurisdiction, without prejudice, pursuant to Fed.R.Civ.P. 12(b)(1) and 28 U.S.C. 1367(c). *See id. See also Meng v. Schwartz,* 116 F.Supp.2d 92 (D.D.C.2000) (Judgment).

On October 10, 2000, the plaintiffs moved, pursuant to Fed.R.Civ.P. 59(e) and Fed.R.Civ.P. 60(b), to alter or amend the Court's judgment, attempting to dismiss Terence R. McAuliffe in an effort to establish diversity jurisdiction. On July 9, 2001, the Court denied the Plaintiffs' 59(e) and 60(b) motions upon finding that the prior judgment was neither incorrect nor unjust as required under the rules. The Court also noted that despite the pragmatic arguments propounded by the plaintiffs in support of their decision to file Rule 59(e) and Rule 60(b) motions, the plaintiffs could have simply invoked the Court's jurisdiction over its state law claims by omitting Terrence R. McAuliffe from a newly filed complaint and otherwise properly pleading diversity jurisdiction. *See Meng v. Schwartz,* 98–2589 (D.D.C. July 9, 2001) (Memorandum and Order). On September 10, 2001, the plaintiffs filed the instant case against the same group of defendants, save Terry R. McAuliffe, invoking the Court's diversity jurisdiction.

The plaintiffs also appealed Meng I, and the D.C. Circuit upheld the decision in Meng I for substantially the same reasons given by this Court. *See Meng v. Schwartz,* 48 Fed.Appx. 1, 2–3, 2002 WL 31248491 (D.C.Cir.2002). In upholding this Court's decision in Meng I, the D.C.Cir. agreed that the plaintiffs failed to state a claim upon which relief could be granted because they could not establish that the defendants' alleged activities proximately caused their injuries. *See Meng,* 48 Fed.Appx. at 2–3. In addition, the D.C.Cir. held that prior litigation before a New York State court,[4] which fully and fairly litigated the bonus payment issue, precluded relitigation of the bonus payment/reimbursement issue in the plaintiffs' case. *See id.* On November 21, 2002, the plaintiffs petitioned for a rehearing, which the D.C.Cir. denied on December 23, 2002.

As just mentioned, on September 10, 2001,[5] the plaintiffs filed the instant shareholder derivative action pursuant to Rule 23.1 for recovery by and on behalf of Loral Space. With the exception of the federal RICO claim and the naming of Terrence McAuliffe as a defendant, the instant action was filed by the same plaintiffs, asserts the same facts, alleges the same counts and names the same parties as in Meng I.

Specifically, the four counts alleged in the instant complaint are: (1) breach of fiduciary duty as to defendant Schwartz; (2) negligence as to defendant Schwartz; (3) unjust enrichment as to defendants DNC, DSCC, and DCCC; and (4) civil conspiracy as to all of the defendants. In aggregate, the defendants move to dismiss the instant action pursuant to Rule 12(b)(1), maintaining that this Court does not have subject matter jurisdiction over the instant action because the plaintiffs have failed to establish complete diversity. The defendants also move to dismiss the

---

**4.** *See Silverman v. Schwartz,* No. 102623/96, slip op. *3 (N.Y.Sup.Ct. Mar. 4, 1997), *aff'd,* 248 A.D.2d 332, 670 N.Y.S.2d 95 (1st Dep't 1998).

**5.** Plaintiffs' instant complaint was initially filed on August 8, 2001, asserting federal question jurisdiction, but was refiled as an Amended Complaint on September 10, 2001, asserting diversity jurisdiction.

plaintiffs' action pursuant to Rule 12(b)(6), maintaining that: (1) res judicata bars the action in its entirety; (2) collateral estoppel precludes relitigation of each count alleged in the complaint; (3) the counts alleged in the action are time-barred; and (4) the plaintiffs fail to meet the requirements of Rule 23.1 certification.

## I. *Dismissal For Lack Of Subject Matter Jurisdiction*

■ For the reasons stated below, the Court dismisses the plaintiffs' action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

The plaintiffs assert that this Court has subject matter jurisdiction over their claims pursuant to 28 U.S.C. § 1332, which permits federal district courts to exercise jurisdiction over actions that lie in diversity. *See* 28 U.S.C. § 1332. The defendants maintain that the Court lacks subject matter jurisdiction because the plaintiffs have failed to demonstrate complete diversity of citizenship, and, therefore, move to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction.

■ Pursuant to Rule 12(b)(1), a district court should dismiss an action for lack of subject matter jurisdiction when the facts and allegations before the court belie the plaintiffs' averment that federal jurisdiction exists. *See* Fed.R.Civ.P. 12(b)(1). In the case of an action invoking a court's diversity jurisdiction under § 1332, it is the invoking party's burden to show that: (1) complete diversity exists; and (2) the claim in good faith exceeds $75, 000. *See Tavoulareas v. Comnas,* 720 F.2d 192, 195 (D.C.Cir.1983.); *Group Hospitalization and Medical Services, Inc. v. Richardson,* 946 F.Supp. 50, 52 (D.D.C.1996) (citing *Cameron v. Hodges,* 127 U.S. 322, 8 S.Ct. 1154, 32 L.Ed. 132 (1888)). The requisite jurisdictional amount must be met by each plaintiff, and complete diversity must be established upon a showing that each plaintiff has a different citizenship from each defendant. *See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). For the purposes of establishing complete diversity under § 1332, the citizenship of every party to the action must be distinctly alleged and cannot be established presumptively or by mere inference. *See* Charles A. Wright, Miller & Cooper, Federal Practice and Procedure § 3605 (3d ed.1984). Currently in dispute is whether the plaintiffs have demonstrated complete diversity in satisfaction of 28 U.S.C. § 1332.

In the instant case, this Court does not have subject matter jurisdiction over the action because the plaintiffs have failed to show complete diversity of citizenship. The complaint alleges that the plaintiffs reside in Virginia and Maryland, while the named defendants reside and/or have their principle place of business in New York, Tennessee, California, Florida or Washington, D.C. The plaintiffs also name unknown "John and Jane Does 1–10" as defendants, but fatally fail to plead their places of citizenship. Nowhere in the complaint do the plaintiffs make a distinct or affirmative statement that establishes the citizenship of the John and Jane Does. Although, the plaintiffs maintain in subsequent pleadings that the Court should infer the diverse citizenship of the John and Jane Does because plaintiffs would not name non-diverse John and Jane Does so as to destroy their own basis of jurisdiction, this type of backdoor pleading is insufficient to establish diversity because it would require the Court to draw the precise type of inference that the rules of diversity under § 1332 proscribe.

The plaintiffs' contention that 28 U.S.C. § 1441, the removal statute, somehow saves the day is also unavailing. The

plaintiffs maintain that § 1441(a), which permits the citizenship of fictitious defendants to be disregarded when assessing whether complete diversity exists, applies to the instant case. However, the plaintiffs fail to note that § 1441(a)'s permissive diversity standard only applies to cases that have been removed from state court to federal court pursuant to 28 U.S.C. § 1441. *See Howell v. Tribune Entertainment Co.,* 106 F.3d 215, 218 (7th Cir.1997) (holding that "because the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, 'John Doe' defendants are not permitted in federal diversity suits."). Prior to § 1441(a)'s amendment in 1988, it was common practice for plaintiffs to name fictitious defendants in state court actions in order to destroy diversity and prevent defendants from exercising their right to remove cases to federal court. *See* Charles A. Wright, Miller & Cooper, 14 Federal Practice & Procedure § 3642 (3d ed.1998) (citing Judicial Improvements and Access to Justice Act of 1988, Pub.L. 100–702 § 1016(a), 10 Stat. 4669 (1988)). As noted in Wright and Miller, "[t]he Judicial Improvements and Access to Justice Act was limited to removal jurisdiction, however, and it did not address the effect of the presence of Doe defendants on the original subject matter jurisdiction of federal courts." *Id.* If Congress had intended for § 1441(a)'s type of permissive diversity standard to apply to cases brought under § 1332, it could have expressly stated so in the 1988 amendments. However, Congress took no such action. Although this Court can pontificate on why Congress did not take such action, perhaps because the policy concerns underlying the § 1441(a) amendment are not at issue in cases originally brought in federal court under § 1332, this Court is powerless to extend § 1441(a)'s permissiveness to actions brought under § 1332

and will deny the plaintiffs' request to do so.

■ Equally unavailing is the plaintiffs' argument that voluntary dismissal at a later date of a John or Jane Doe who is found to be non-diverse would cure the current jurisdictional defect. The plaintiffs cannot win on this argument because diversity must exist at the time that the action is commenced. *See Richardson,* 946 F.Supp. at 52 (citing *Freeport–McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991)). Moreover, the Court has no assurances that the plaintiffs would be able to dismiss a non-diverse John or Jane Doe at a later date without otherwise destroying the action because the plaintiffs' complaint fails to aver whether the John and Jane Does are necessary and indispensable parties to the suit. *See* Fed.R.Civ.P. 19(a)-(b). If the John and Jane Does are not necessary parties to the suit, then their later dismissal would not adversely impact the posture of the action. However, if they are necessary parties, then their later dismissal would adversely impact the preservation and perfection of the diversity claim and destroy the action in any event. *See* Fed.R.Civ.P. 19(b). The plaintiffs' total failure to address this issue, leaves the Court with no basis on which to seriously entertain this point.

For these reasons, the Court finds that plaintiffs have failed to demonstrate complete diversity as required by 28 U.S.C. § 1332, thereby, failing to establish this Court's subject matter jurisdiction over this action. The Court, therefore, will dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

II. *Dismissal For Failure To State a Claim Upon Which Relief Can Be Granted*

■ Even if it were found that this Court has subject matter jurisdiction over

the plaintiffs' claims, all four counts of the action would still be subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Pursuant to Rule 12(b)(6), a district court should dismiss a complaint for failure to state a claim when it is clear that no relief could be granted under any set of facts that could be proved consistent with the complaint's allegations. *See Hishon v. King Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir.1997). For the purposes of a Rule 12(b)(6) motion, all well-pleaded allegations are presumed to be true, and all doubts and inferences are resolved in the pleader's favor and drawn in the light most favorable to the pleader. *See Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C.Cir.1979). However, the court need not accept bald or controverted statements as true. *See Wiggins v. Hitchens*, 853 F.Supp. 505, 508 (D.D.C.1994). Review of the plaintiffs' complaint under this standard reveals that collateral estoppel prevents the plaintiffs from demonstrating, under any set of facts, elements necessary to the relief that they request.

### 1. *Collateral Estoppel*

In the instant case, the Court finds that the doctrine of collateral estoppel bars relitigation of issues that are central to the viability of the counts in the plaintiffs' complaint. As such, each of the counts alleged in the complaint must be dismissed for failure to state a claim upon which relief can be granted.

The defendants maintain that the plaintiffs' counts are barred because issues requisite to the establishment of each claim have already been litigated and adversely decided against the plaintiffs. Specifically, the defendants maintain that: (1) the

Court's Meng I decision, that plaintiffs could not demonstrate that the defendants' alleged activities proximately caused the plaintiffs' alleged harm, and applicable choice of law rules preclude the plaintiffs' breach of fiduciary duty, negligence and conspiracy claims; and (2) relitigation of the reimbursement issue central to the plaintiffs' unjust enrichment claim is barred by prior litigation before a New York State court.

■■ The doctrine of collateral estoppel permits a new suit on the merits, but precludes relitigation of issues that were conclusively determined in a previous action. *See GAF Corp. v. U.S.*, 818 F.2d 901, 911 (D.C.Cir.1987). The application of collateral estoppel requires that: (1) the issue has actually been litigated, that is contested by the parties and determined by the court; (2) the issue must have been necessary to the court's competent disposition of the case; and (3) the relitigation bar in the second action not work an unfairness against the party upon whom the preclusion is imposed. *See Jack Faucett Associates, Inc. v. American Telephone and Telegraph Co.et al.*, 744 F.2d 118, 125 (D.C.Cir. 1984); *United States v. TDC Mgmt. Corp.*, 24 F.3d 292, 295 (D.C.Cir.1994); *Martin v. Malhoyt*, 830 F.2d 237, 264 (D.C.Cir.1987); *Paley*, 20 F.Supp.2d 83, 88 (D.D.C.1998).

At issue with regards to the breach of fiduciary duty, negligence, and civil conspiracy claims is whether the Court's prior determination of proximate cause bars relitigation of the proximate cause issue critical to the disposition of all three of the aforementioned counts. Before reaching whether collateral estoppel applies to issues that are critical to the plaintiffs' counts, the Court must determine the applicable substantive law by engaging in a choice of law analysis as discussed below.

A federal court sitting in diversity must apply the choice of law rules of the jurisdiction in which it sits. *See Eli Lilly and Co. v. Home Insurance Co., et al.*, 764 F.2d 876, 882 (D.C.Cir.1985) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). The District of Columbia follows a modified "interest analysis" approach to resolving choice of law issues. *See Eli Lilly and Co.*, 764 F.2d at 882. Pursuant to the choice of law rules of the District of Columbia, a court must first determine whether there is a conflict of laws between the relevant jurisdictions. *See GEICO v. Fetisoff,* 958 F.2d 1137, 1141 (D.C.Cir. 1992). Upon finding such a conflict, a court should apply the law of the jurisdiction that has the "more substantial interest." *See Eli Lilly and Co.,* 764 F.2d at 882.

Applying the modified "interest analysis" approach, the Court finds that there is a conflict of law between D.C., the jurisdiction in which the action was brought, and Bermuda, Loral Space's place of incorporation. D.C.'s common law proximate cause standard allows for a foreseeability finding that requires less of a causal link than the proximate cause standard under Bermudian common law. The lesser standard of proximate cause in D.C. would lessen the plaintiffs' causation burden, rendering the causation issue unlitigated and the Court's prior proximate cause finding inapplicable. Because the outcome of the plaintiffs' action would be different under D.C. law than under Bermudian law, a true conflict of laws exists, and the Court must now determine which jurisdiction has the "more substantial interest" in having its laws applied.

a. *Breach of Fiduciary Duty and Negligence*

Because the plaintiffs' breach of fiduciary duty and negligence claims deal substantially with matters of corporate governance and the internal organizational affairs, the Court finds that Bermuda, as the place of incorporation has, the "more substantial interest" in having its laws applied. *See Cowin v. Bresler,* 741 F.2d 410, 414 n. 4 (D.C.Cir.1984) ("In cases involving issues of corporate governance and internal corporate matters, D.C. applies the law of the place of incorporation."). As alleged in the complaint, the purported breach of fiduciary duty and negligence occurred between Loral Space CEO Bernard Schwartz and the shareholders of the Bermuda corporation, and involved funds illegally procured by Bernard Schwartz for a purpose and in a manner that allegedly injured Loral Space shareholders. However, as to these claims specifically, the only connection that D.C. has is tangential because the Clinton administration and democratic organizations alleged to have participated in the illegal quid pro quo scheme simply work in and/or reside in D.C. area. Because the crux of the breach of fiduciary duty and negligence claims deal with issues of corporate governance and internal accountability, there is no policy of D.C. that would be vindicated by application of its laws. However, denial of Bermudian law in this instance would assuredly prevent vindication of its corporate laws in circumstances where those very laws are being violated. Therefore, the Court finds that Bermudian law applies to the plaintiffs' claims of breach of fiduciary duty and negligence.

Applying the law of Bermuda, the Court consequently finds that collateral estoppel precludes the plaintiffs' breach of fiduciary duty and negligence claims because the issue of proximate cause central to both claims has already been fully and fairly litigated and resolved adversely to the plaintiffs. As averred by the defen-

dants and uncontroverted by the plaintiffs, Bermudian proximate cause law is substantively and substantially similar to U.S. common law tort standards. In the United States, common law tort standards of proximate cause are substantively and substantially similar to the proximate cause standard under RICO.[6] As such, failure to demonstrate proximate cause under RICO will result in the failure to demonstrate proximate cause under common law tort claims, *see Service Employees International Union Health and Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1076 n. 6 (D.C.Cir.2001), because "[t]he RICO proximate cause requirement is identical to the same requirement at common law ...." *See Aramony v. United Way of America*, 1998 WL 205331, *5 (S.D.N.Y. 1998).

This symmetry of law has been acknowledged by the Supreme Court, as well as several circuit courts. *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268–69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (finding that the RICO standard of causation incorporates common law standards of proximate cause); *Aramony*, 1998 WL at *7 (stating that "[i]t

is not surprising that RICO and proximate cause analyses are the same, as the former was intended to replicate the latter."); *Association of Washington Public Hospital Districts v. Philip Morris Inc.*, 241 F.3d 696, 707 (9th Cir.2001) (holding that "[t]he proximate cause test for federal antitrust and RICO standing is the common law proximate cause test."); *Laborers Local 17 v. Philip Morris, Inc.*, 191 F.3d 229, 234 (2d Cir.1999) ("To determine in a given case whether proximate cause is present [for purposes of RICO claims], common law principles are applied."); *Oregon Laborers*, 185 F.3d at 968 ("[F]or the same reasons that proximate cause did not exist for plaintiffs' RICO and antitrust claims, proximate cause is lacking for their fraud claim"); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 934–35 (3d Cir.1999) ("The same principles that lead us to conclude that plaintiffs' antitrust and RICO claims were properly dismissed lead to the inevitable conclusion that their state law claims must also fail.... Just as we have found the link between defendants' alleged fraud-providing false information regarding the safety of their products-and plaintiffs' al-

---

**6.** The plaintiffs' contention that the Court is bound by contrary footnote references in its Meng I decision is meritless. First, the Court's reference in a footnote is not controlling to either the opinion in which the reference is made or to further consideration and development of the issue addressed in subsequent proceedings. Second, the Court's reference was addressed to an issue of statutory interpretation, namely that policies directly informing a congressional enactment should guide interpretation of the respective legislative act, as opposed to policies underlying similar common law principles. However, the issue in the instant case regards circumstances where the statute, and in this case its proximate cause standard, have been interpreted and the remaining issue is whether that interpretation is so similar to the proximate cause standard under the common law torts asserted in the instant action that a prior

determination of proximate cause precludes relitigation of the proximate cause issue in a subsequent proceeding. Because the Court's prior reference raised the issue, but did not independently dispose of it, the footnote references are not dispositive of the specific issue here, which is whether the policies underlying RICO and those underlying common law tort claims such as those raised in this action are of such parity that a proximate cause finding under RICO would compel the same proximate cause finding under common law tort standards. As noted in the text of this opinion, the Supreme Court and several circuits have indeed found that such a parity and result exist. It is the weight of that authority and in the context of the briefing and issue development in the instant case that the Court now bases its proximate cause and collateral estoppel determination.

leged injuries too attenuated to support a RICO claim, we also find the link too remote to support a common-law fraud claim."); *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 445–46 (3d Cir.2000) (quoting *Steamfitters*, 171 F.3d at 934, for the proposition that the same proximate cause determination that leads to dismissal of a plaintiff's similarly results in dismissal of state law claims based on lack of proximate cause).

Here, the plaintiffs are precluded from attempting to relitigate the issue in the instant action because the proximate cause issue was litigated and determined in Meng I. Because the Court's prior determination was adverse to the plaintiffs and applies in this case, the plaintiffs cannot establish their breach of fiduciary duty and negligence claims. The Court, therefore, dismisses the plaintiffs' breach of fiduciary duty and negligence claims pursuant to Rule 12(b)(6) for failure to state a claim.

### b. *Plaintiffs' Civil Conspiracy Claim*

The doctrine of collateral estoppel also bars relitigation of the proximate cause issue central to the civil conspiracy count, thereby requiring its dismissal. Additionally, the plaintiffs civil conspiracy count fails because there is no independent cause for conspiracy under D.C. law.

Applying the same choice of law analysis utilized earlier, the Court finds that it must apply D.C.'s substantive law to the plaintiffs' civil conspiracy claim, because, as to this claim, D.C. has the "more substantial interest." In relation to the civil conspiracy count, the majority of the illegal activities alleged are beyond internal corporate affairs and encompass a broader spectrum of D.C.-based participants whose activities would have taken place almost exclusively in the D.C. area. Because there is an identity between the

issue of proximate cause applicable under the civil conspiracy count and that already disposed of in Meng I, the proximate cause disposition in Meng I also disposes of the conspiracy claim in this case. Additionally, because there is no independent cause of action for civil conspiracy under D.C. law, dismissal of the plaintiffs' breach of fiduciary duty and negligence claims also disposes of any underlying tort to which the civil conspiracy claim could have attached, necessitating its dismissal. *See Hall v. Clinton*, 285 F.3d 74, 82 (D.C.Cir. 2002) (holding that civil conspiracy is not actionable on its own and cannot stand as an isolated cause of action).

### c. *Plaintiffs' Unjust Enrichment Claims*

Relitigation of the reimbursement issue necessary to prove the plaintiffs' unjust enrichment claim is precluded by a prior shareholder derivative action before a New York State court, in which the issue was litigated and decided. The crux of plaintiffs' unjust enrichment claim in the instant case is the same as the claim that they unsuccessfully litigated before a New York State court in a prior shareholders derivative action, that Loral Space made a bonus payment to Bernard Schwartz to reimburse him for unlawful campaign contributions to the detriment of individual shareholders and the corporation at large. In that prior action, the New York court held that the plaintiffs lacked standing to challenge, directly or indirectly, the bonus payment that they claim acted as reimbursement for Bernard Schwartz' illegal campaign contributions because the bonus payment at issue was made by Loral Corporation, not Loral Space. *See Silverman v. Schwartz*, No. 102623/96, slip op. *3 (N.Y.Sup.Ct. Mar. 4, 1997), *aff'd*, 248 A.D.2d 332, 670 N.Y.S.2d 95 (1st Dep't 1998). Because this issue has already

been litigated and decided against the plaintiffs, they are collaterally estopped from attempting to relitigate this issue in the instant action. Because application of the New York court's holding prevents the plaintiffs from establishing their unjust enrichment claim, the Court must also dismiss this count for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## III. *Other Grounds For Dismissal Offered By the Defendants*

Although the Court finds that the particular grounds discussed below lack merit, and, therefore, are not part of its decision to dismiss the plaintiffs' action, in the interest of comprehensive review of the merits of the plaintiffs' complaint and the defendants' motions, the Court will address these other asserted grounds.

### 1. *Statute of Limitations*

■ Contrary to the defendant's contention, the plaintiffs' action is not time-barred because actions dismissed pursuant to the federal supplemental jurisdiction statute, 28 U.S.C. § 1367(d), will not be barred by a statute of limitations because of time lost in federal court. The statute expressly tolls the statute of limitations while the claim is pending and provides a period of at least 30 days, more if allowed by state law, after dismissal in which the claim may be refiled in a court of competent jurisdiction.

Here, the statute of limitations began running in 1996. The plaintiffs filed their first action within the statute of limitations for the actions alleged in the complaint on November 24, 1998. This Court issued its Meng I decision on September 25, 2000, dismissing the federal RICO claim pursuant to Rule 12(b)(6) and dismissing the plaintiffs' supplemental claims pursuant to 12(b)(1). On October 10, 2000, the plain-

tiffs filed motions to reconsider which the Court denied on July 9, 2001. The instant action was filed on August 8, 2001, exactly 30 days later and within the additional time allotted under the supplemental jurisdiction statute. The plaintiffs' action, therefore, survives the statute of limitations.

### 2. *Res Judicata*

■ Here, the defendants maintain that the Court's decision in Meng I, to dismiss the plaintiffs' federal RICO claim and to decline the exercise of supplemental jurisdiction over the plaintiffs' pendant state law claims, raises the res judicata bar against the plaintiffs' instant complaint. The defendants further maintain that the plaintiffs' action is barred by this Court's denial of the plaintiffs' Rule 59(e) and Rule 60(b) motions, the plaintiffs' failure to appeal the Court's denial of these motions, and the plaintiffs' failure to invoke the Court's diversity jurisdiction in the first instance. The plaintiffs counter that res judicata is inapplicable because none of the Court's prior decisions regarding the plaintiffs' supplemental claims were decisions on the merits to which the res judicata bar properly attaches.

■ Pursuant to the doctrine of res judicata, a final judgment on the merits precludes a party from relitigating claims that were or could have been raised in the initial action. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Appalachian Power Co. et al. v. Environmental Protection Agency*, 251 F.3d 1026, 1034 (D.C.Cir.2001); *NRDC v. Thomas*, 838 F.2d 1224, 1252 (D.C.Cir. 1988). Application of the res judicata doctrine requires: (1) an identity of parties (actual or in privity); (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) an identity of the cause of action in both

suits. *See Paley v. Estate of Ogus*, 20 F.Supp.2d 83, 87 (D.D.C.1998). While dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) does have preclusive effect on the particular jurisdictional basis upon which the case was dismissed, it is not a decision on the merits, and as such does not preclude the party from refiling the claims in a court of competent jurisdiction or in the same court upon proper jurisdictional grounds. *See Kasap v. Folger Nolan Fleming & Douglas*, 166 F.3d 1243, 1248 (D.C.Cir.1999) (holding that dismissal for lack of subject matter jurisdiction is binding upon the jurisdictional issue litigated, but is not a decision on the merits "and therefore has no res judicata effect on subsequent attempts to bring suit in a federal court of competent jurisdiction."); *Prakash v. American University*, 727 F.2d 1174, 1182 (D.C.Cir.1984) (holding that "[a] dismissal for lack of subject matter jurisdiction ... is not a decision on the merits and consequently does not have res judicata effect. A litigant whose action is dismissed for lack of diversity, therefore, may refile the action in an appropriate forum."). *See also* Wright & Arthur R. Miller, 5A Federal Practice and Procedure § 1350, at 255 (2d ed.1990).

Here, res judicata does not apply to the instant action because the Court's Meng I decision to decline the exercise of supplemental jurisdiction over the plaintiffs' pendant claims and the Court's dismissal of the plaintiffs' 59(e) and 60(b) motions were not "decision[s] on the merits" to which the res judicata bar would apply.

In Meng I, this Court dismissed the plaintiffs' federal RICO count for failure to state a claim upon which relief could be granted, an act constituting a "decision on the merits." Having dismissed the plaintiffs' only independent basis of federal jurisdiction, the Court then declined to exer-cise supplemental jurisdiction over the plaintiffs' pendant state law claims, and dismissed them for lack of subject matter jurisdiction. Res judicata only attaches to decisions on the merits. *See Prakash*, 727 F.2d at 1182. Although the Court's decision to decline the exercise of supplemental jurisdiction over plaintiffs' state law claims precludes relitigation of that particular jurisdictional issue, it was not a "decision on the merits," and, therefore, does not preclude the reinstitution of those claims in an action based on diversity. *See Kasap*, 166 F.3d at 1248 (dismissal for lack of subject matter jurisdiction is not a decision on the merits).

The defendants' contention that the Court's denial of the plaintiffs' Rule 59(e) and Rule 60(b) motions preclude the plaintiffs' diversity-based action is also incorrect. Rule 59(e) and Rule 60(b) motions to alter or amend are only properly used to request "reconsideration of matters properly encompassed in a decision on the merits." *Lentomyynti Oy v. Medivac Inc.*, 997 F.2d 364, 366 (7th Cir. 1993) (quoting *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982)). Such motions may not be used to reconsider matters that were "wholly collateral" to the court's decision on the merits, and motions used for such an improper purpose must be denied. *See Lentomyynti*, 997 F.2d. at 366. Moreover, a denial based on the collateral nature of the issue presented for reconsideration, is collateral in and of itself, and denial of a motion for reconsideration on such a basis will not act as a bar to the substantive decisions on the merits that still have yet to be litigated.

Here, the Court's only decision on the merits in Meng I was the dismissal of the federal RICO claim. As previously discussed, the Court's decision not to exercise supplemental jurisdiction over the plain-

tiffs' pendant state law claims was not a decision on the merits, and, as such, was wholly collateral to the Court's decision on the merits. Therefore, the plaintiffs' attempt to use motions for reconsideration to vest the Court with diversity jurisdiction was improper because the issue of diversity jurisdiction was collateral to the court's substantive decision in Meng I, and denial was, therefore, required. However, because the motions improperly requested consideration of the collateral issue of diversity, the Court's denial, itself, was collateral, and, as such, does not preclude plaintiffs from re-instituting their action for resolution of the claims that have not yet been litigated.

For these reasons, the Court finds that the plaintiffs action is not barred by res judicata.

### 3. *Rule 23.1 Certification*

Having found that all four of the plaintiffs' counts are precluded by prior litigation, as discussed above, the Court further finds that it need not reach the issue of whether plaintiffs' certification under Rule 23.1 is proper.

### CONCLUSION

For the aforementioned reasons, the Court finds that plaintiffs have failed to demonstrate that complete diversity exists, thereby failing to demonstrate that this Court has subject matter jurisdiction over this action. The Court, therefore, will dismiss this action as to all named defendants, except defendant Loral Space, pursuant to Rule 12(b)(1). This Court also finds that, even if it had subject matter jurisdiction over this case, issues central to each of the plaintiffs' four counts have already been litigated and adversely decided against the plaintiffs in prior litigation, thereby precluding relitigation of those issues under the doctrine of collateral estoppel and requiring dismissal of all four claims pursuant to Rule 12(b)(6).

A separate order shall issue this date.

### ORDER

Consistent with the Memorandum Opinion released this date, it is hereby

ORDERED, that the motion to dismiss filed by defendant Bernard Schwartz [64] be GRANTED,

ORDERED, that the motion to dismiss filed by defendant John Huang [60]/[71] be GRANTED,

ORDERED, that the motion to dismiss filed by defendant Marvin Rosen [65] be GRANTED,

ORDERED, that the motion to dismiss filed by defendant William Jefferson Clinton [66] be GRANTED,

ORDERED, that the motion to dismiss filed by defendant Hillary Rodham Clinton [66] be GRANTED,

ORDERED, that the motion to dismiss filed by defendant Democratic National Committee [67] be GRANTED,

ORDERED, that the motion to dismiss filed by defendant Democratic Senatorial Campaign Committee Inc. [67] be GRANTED,

ORDERED, that the motion to dismiss filed by defendant Democratic Congressional Campaign Committee Inc. [67] be GRANTED,

ORDERED, that the motion to dismiss filed by defendant DNC Services Corporation [67] be GRANTED,

ORDERED, that the motion to dismiss filed by defendant Albert Gore, Jr. [69] be GRANTED,

ORDERED, that the motion to dismiss filed by defendant Harold Ickes [69] be GRANTED,

64

ORDERED, that the motion to dismiss filed by defendant Melissa Moss [69] be GRANTED,

ORDERED, that the motion to dismiss filed by defendant Alexis Herman [69] be GRANTED,

ORDERED, that the motion to dismiss filed by defendant Samuel Berger [69] be GRANTED.

ORDERED, that this action is dismissed as to all defendants except Loral Space and Communications, Ltd.

SO ORDERED.

### ORDER

Upon consideration of the notice of bankruptcy of defendant Loral Space and Communications, Ltd., all proceedings herein as to Loral are STAYED as required by the Bankruptcy Code, 11 U.S.C. § 362(a).

All other defendants having been dismissed, this action is hereby terminated on the active dockets of this court, subject to reopening upon notice by either plaintiffs or Loral within 30 (thirty) days of the termination of the grounds for the automatic stay as to Loral.

SO ORDERED.